**UNITED STATES of America, Appellee,**

v.

**Diane DOCKERY, Appellant.**

**No. 83–1559.**

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1984.

Decided June 12, 1984.

Certiorari Denied Oct. 1, 1984. See 105 S.Ct. 197.

Lessenberry & Carpenter by Jack L. Lessenberry, Little Rock, Ark., for appellant.

George W. Proctor, U.S. Atty., Robert J. Govar, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before LAY, Chief Judge, and HEANEY, BRIGHT, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG and BOWMAN, Circuit Judges, en banc.

ARNOLD, Circuit Judge.

Diane Dockery, an employee of a federally insured bank, appeals from her conviction by a jury of seventeen counts of em-

bezzling bank funds in violation of 18 U.S.C. § 656. The District Court[1] sentenced her to concurrent terms of imprisonment of a year and a day on Counts I and II and suspended imposition of sentence on the remaining counts, instead placing her on probation for three years following her imprisonment and requiring her to make restitution to her employer in the amount of $1,300. On appeal, a panel of this Court reversed. *United States v. Dockery*, 718 F.2d 850 (8th Cir.1983). The government's petition for rehearing en banc was then granted, the opinion of the panel was therefore vacated by operation of law, and the case was re-submitted to the Court en banc. We now affirm.

I.

On October 8, 1982, FBI Special Agents Herb Davis and Ray McElhaney interviewed Dockery concerning thefts of funds from her employer, the Union National Bank of Little Rock, Arkansas. Dockery denied any knowledge of such thefts. On November 3, 1982, one of Dockery's fellow employees gave a signed statement claiming that both he and Dockery had embezzled funds from the bank.

The following day, November 4, 1982, Special Agents Davis and McElhaney caused a bank official to summon Dockery for questioning to a small, vacant office in the bank building where appellant was working. When she arrived, Agent Davis told her that she did not have to answer any questions, she was not under arrest nor was she going to be arrested, and that she was free to leave at any time. No *Miranda* warnings were given. During the interview, which lasted only sixteen minutes, the FBI agents told Dockery that they believed she was involved in the theft of bank funds and they had her fingerprints. In fact, the only fingerprints the agents had were those retrieved from the bank's personnel records. Dockery steadfastly denied any involvement in the thefts,

---

1. The Hon. William R. Overton, United States District Judge for the Eastern District of Arkan-   sas.

and the interview terminated. The agents then left, but asked Dockery to wait in the reception area outside the interview room in case any bank officials wanted to question her. Dockery complied.

A few minutes later, Dockery asked a bank official to find the two FBI agents because she wanted to talk to them again. The FBI agents returned and again repeated their warnings that Dockery did not have to talk to them and was free to leave whenever she desired. When Dockery began once again to deny her involvement in the thefts of bank funds, Agent Davis told her that he was busy and was not interested in hearing her repeat what she had already said. He then asked, "Why don't you tell me what happened?" At this point, Dockery gave a statement implicating herself in the thefts. This statement was transcribed by one of the agents, and Dockery signed it after making corrections.

In a pretrial hearing on her motion to suppress the confession, Dockery testified that she had requested to speak to an attorney during both of the interviews on November 4, 1982, but was prevented from doing so by the FBI agents. The FBI agents denied this testimony and stated that Dockery had never asked to see an attorney. All parties agreed that Dockery was never handcuffed, physically restrained, physically abused, or threatened during the two interviews, although the door to the interview room was closed. The District Court discredited Dockery's testimony regarding her requests for an attorney and concluded that, considering all the circumstances, the two interrogations resulting in her confession were neither custodial nor impermissibly coercive.

## II.

Dockery argues that the admission of her confession into evidence violated her Fifth Amendment right against self-incrimination, because the agents did not give her the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and because, in any event, her confession was involuntary. We reject these arguments.

■ *Miranda* warnings are required only when there is a custodial interrogation. *Id.* at 444, 86 S.Ct. at 1612. The question is whether appellant was in custody when she was interrogated. This case is similar to *United States v. Jones,* 630 F.2d 613 (8th Cir.1980) (per curiam). In that case Jones, a suspect in a bank embezzlement, was interviewed by FBI agents at her home. At the time of questioning, Jones was "the only potential suspect and certainly was the focus of the investigation." *Id.* at 614. Jones agreed to speak to the agents and was informed that she was not under arrest and was free to refuse to answer any questions. There was no evidence of conduct on the part of the interrogating agents indicating that Jones was in custody, nor did the agents employ any strong-arm tactics. *Id.* at 616. We held that Jones's statements were admissible.

■ Dockery argues that the circumstances of her interrogation were more coercive than those in *Jones.* The differences are insignificant. The agents' misrepresentation to Dockery that they had incriminating fingerprint evidence "has nothing to do with whether [Dockery] was in custody for purposes of the *Miranda* rule." *Oregon v. Mathiason,* 429 U.S. 492, 496, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam). Although Dockery, unlike Jones, was directed by her employer to meet with the agents, "[o]rdinarily, when people are at work their freedom to move about has been meaningfully restricted, not by the actions of law enforcement officials [sic], but by the workers' voluntary obligations to their employers." *Immigration & Naturalization Service v. Delgado,* —— U.S. ——, ——, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984) (Fourth Amendment case). Finally, even though the agents asked Dockery to wait in the reception area after the first interview, she herself initiated the second interview and, at its commencement, was again advised that she did not have to answer any questions and was free to go. The District Court found that Dockery was not in custody and that her confession was voluntary, and we cannot say that that finding is clearly erroneous.

Accordingly, we affirm the judgment of the District Court.

McMILLIAN, Circuit Judge, with whom HEANEY and BRIGHT, Circuit Judges, join, dissenting.

I respectfully dissent. I would reverse the judgment of the district court for the reasons set forth in the panel opinion, *United States v. Dockery*, 718 F.2d 850 (8th Cir.1983). First, I would argue that appellant was in custody at the time of the interrogations. Appellant was summoned by a bank official, at the request of the investigating FBI agents, to a small, vacant office in the bank building. She was interrogated alone by the FBI agents with the office door closed. She was not interrogated in the midst of familiar surroundings at home like the defendant in *United States v. Jones*, 630 F.2d 613 (8th Cir.1980) (per curiam). Her freedom of movement was restricted to a certain degree by the fact of employment itself, as noted by the majority opinion, *supra* at ——, *citing INS v. Delgado*, —— U.S. ——, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984) (fourth amendment issues). However, appellant was not at her customary work station in the bank during the interrogations; she had been summoned to another office specifically for questioning. By comparison, the employees in the *Delgado* case were going "about their ordinary business, operating machinery and performing other job assignments. While the surveys did cause some disruption, including the efforts of some workers to hide, the record also indicates that workers were not prevented from moving about the factories." *Id. But see id.* at 1769–70 (Brennan, J., dissenting) (describing the surveys as having caused widespread disturbance among the workers and the intimidating atmosphere created by the INS investigative tactics). Moreover, appellant was specifically directed by the departing agents to remain in the area outside the office for further questioning by bank officials. Although there was no evidence of any physical restraint or "strong arm tactics," the absence of these factors is not conclusive. Similarly, the fact that appellant had not been formally arrested or that she had been informed by the agents that she need not answer any questions does not automatically render the interrogation *non* custodial. *United States v. Jones*, 630 F.2d at 616. I would hold that the interrogations were conducted in a custodial setting and that appellant was improperly not given *Miranda* warnings.

In addition, I would agree that the agents' affirmative misrepresentation to appellant about the incriminating fingerprint evidence, although not relevant to the question of custody for *Miranda* purposes, is not the type of interrogation technique we should condone and is clearly relevant to the voluntariness of the confession. *United States v. Jones*, 630 F.2d at 616.