The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Julio SANDOVAL, Defendant-Appellee.

No. 86SA340.

Supreme Court of Colorado,
En Banc.

May 18, 1987.

Norman S. Early, Jr., Dist. Atty., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Frank O. Bowman, III, Nathan Chambers, Deputy Dist. Attys., Denver, for plaintiff-appellant.

Haddon, Morgan & Foreman, P.C., Norman R. Mueller, Denver, for defendant-appellee.

KIRSHBAUM, Justice.

The People have filed this interlocutory appeal pursuant to C.A.R. 4.1 challenging an order of the Denver District Court suppressing certain statements made by the defendant, Julio Sandoval, to Denver Police Department officials on November 14, 1985. The trial court concluded that although the statements were voluntary, they resulted from impermissible custodial interrogation. We vacate the trial court's order and remand the case for further proceedings.

## I

At approximately 5:00 a.m. on November 14, 1985, Officer Kathy Hall was directed by a Denver Police Department dispatcher to obtain information from a "Mr. Marquez" at a Denver convenience store. She did not know what type of information she was to receive. Officer Henry Hunter also drove to the store as a backup.

When the officers reached the location, the defendant and Leonardo Marquez left the store and approached the two patrol cars. Marquez, apparently upset that no one had responded to an earlier call he had placed, stated to Officer Hall that the defendant had killed a woman. The defendant was smiling and did not appear to Officer Hall to be at all concerned. Officer Hall immediately radioed Denver police officials, who informed her that no homicide had been reported on the previous shift. At that time Officer Hall did not know whether any crime had occurred.

Officer Hall, who speaks very little Spanish, left her car to speak with Marquez. Marquez, who was still agitated, explained in English that the defendant had stated that he had killed a woman and left the body in the defendant's apartment. Officer Hall asked the defendant in Spanish for his name, and the defendant responded. Officer Hall sought additional information from the defendant, who speaks little English, by stating questions to Marquez in English, who in turn questioned the defendant in Spanish and translated the defendant's answers into English. However, at one point Officer Hall directly asked the defendant in English, "you kill somebody?" and the defendant nodded affirmatively. She also asked the defendant in English how he had killed the woman, and the defendant responded by making a stabbing motion, as if he were holding a knife.

Officer Hall directly asked the defendant where he lived and if he would accompany her in the patrol car and point out his apartment. The defendant agreed, entered her car, and directed her toward his residence. Officer Hunter, with Marquez, followed them. The defendant was not arrested, handcuffed or searched at this time, nor was he in any manner advised of his constitutional rights.

As Officer Hall's vehicle approached the defendant's residence, the defendant pointed to an apartment building and, in response to her question in English, indicated that his apartment was number five. Shortly thereafter Sergeant Peter Diaz joined the defendant, Marquez and Officers Hall and Hunter outside the defendant's apartment. Sergeant Diaz asked Marquez to verify that the defendant resided in the apartment. The defendant responded affirmatively to Marquez' question and gave permission, through Marquez, to the police officers to enter the apartment. Marquez gave the defendant's apartment keys to Sergeant Diaz, who then entered the apartment with Officer Hall. They discovered the body of the victim on the floor, wrapped in a sheet.

The defendant was arrested and transported to Denver police headquarters. At 6:30 a.m. he was interviewed by Officer Fred Herrera, a Spanish-speaking officer, in the presence of Officer Hunter. Officer Herrera advised the defendant of his constitutional rights pursuant to the decision of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), by reading verbatim from the Spanish portion of a preprinted police department form.[1] The

---

**1.** The Denver Police Department form which was signed by the defendant states as follows:

> You have a right to remain silent.
>
> Anything you say can be used as evidence against you in court.
>
> You have a right to talk to a lawyer before questioning and have him present during questioning.
>
> If you cannot afford a lawyer, one will be appointed for you before questioning.
>
> Do you understand each of these rights I have read to you?

Each statement or question in English on the form is followed immediately by a statement or question in Spanish words.

There was conflicting testimony at the suppression hearing as to whether certain Spanish words selected to translate critical legal terms and concepts in the written form adequately indicated to the defendant that he was to be interrogated, that he had a right to talk to a lawyer before such interrogation, and that if he could not afford to hire a lawyer one would be appointed without cost to represent the defend-

defendant was seated next to Officer Herrera during the advisement and, according to Officers Herrera and Hunter, appeared to be reading the form as Officer Herrera spoke. The defendant also read some portions of the advisement aloud. The defendant was asked by Officer Herrera after each line was read whether the defendant understood that line; when the defendant replied affirmatively, Officer Herrera placed a check mark next to that line on the form. The defendant subsequently signed the form in two places, indicating that he understood his rights and that he wished to speak voluntarily to Officer Herrera. Officer Herrera then interviewed the defendant in Spanish.

At approximately 8:00 a.m. the defendant was interviewed by Detective John Wyckoff. Officer Herrera served as translator during this second interview. Officer Herrera initially re-advised the defendant of his *Miranda* rights without reading from the form. This advisement and the interview were videotaped. The defendant indicated by nodding his head that he understood each of the rights.[2] The defendant then signed in two places another copy of the same police department form.

An information was filed on November 19, 1985, charging the defendant with committing first degree murder, § 18–3–102, 8B C.R.S. (1986), and a crime of violence, § 16–11–309, 8A C.R.S. (1986). The defendant moved to suppress all statements made to Denver police officials. After conducting a hearing on the motion, the trial court found that the prosecution had established by a preponderance of the evidence that all of the statements made by the defendant were voluntary. The trial court held that any statements made by the defendant after he gestured with a stabbing motion while at the convenience store were products of custodial interrogation and violated the defendant's *Miranda* rights. The

trial court also held that the People failed to establish by clear and convincing evidence that the defendant had waived his constitutional rights at the police station.

II

■ In determining if an individual is in police custody and, therefore, must be given an advisement of rights pursuant to the *Miranda* decision before any police interrogation may begin, a trial court must first ascertain whether a reasonable person in the suspect's position would consider himself deprived of his freedom of action in any significant way. *People v. Archuleta,* 719 P.2d 1091 (Colo.1986); *People v. Black,* 698 P.2d 766 (Colo.1985). In making that determination, the court must consider the totality of the circumstances surrounding the interrogation, including the following factors:

> [T]he time, place and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; whether directions were given to the defendant during the interrogation; and the defendant's verbal or nonverbal response to such directions.

*People v. Thiret,* 685 P.2d 193, 203 (Colo. 1984). *See, e.g., People v. Archuleta,* 719 P.2d 1091; *People v. Black,* 698 P.2d 766; *People v. Johnson,* 671 P.2d 958 (Colo. 1983).

■ Here, the trial court stated that any police officer would have been remiss in his duties if he had allowed the defendant to leave after Marquez reported that the defendant said he had killed a woman and the

---

ant before the commencement of any interrogation. In light of our determination that the case must be remanded for findings of fact and the application of the correct legal standard, we need not decide the issue of the adequacy of Spanish language portions of the form.

**2.** Exhibit H–1 was identified at trial as containing accurate English translations of Officer Herrera's oral statements in Spanish to the defendant beginning at 7:59 a.m. on November 14, 1985. The exhibit was admitted without objection, and we express no opinion regarding the accuracy thereof.

1204

defendant made the stabbing gesture. The record indicates that this observation was the basis for the trial court's conclusion that the defendant was in custody from the moment he made the gesture. However, whether a reasonable police officer might have been imprudent in allowing an individual to leave under these circumstances does not dispose of the custody issue. *People v. Wallace*, 724 P.2d 670, 674 (Colo. 1986) (fact that probable cause to arrest defendant existed at time of questioning not dispositive of custody issue). Because it appears from the record that the trial court did not apply the proper standard in determining when the defendant was in police custody, the case must be remanded for determination of this issue under the correct legal principles.

### III

■ The trial court concluded that the two statements made at the Denver police headquarters must be suppressed because the prosecution failed to demonstrate by clear and convincing evidence that the defendant had validly waived his rights to remain silent and to confer with an attorney before responding to custodial interrogation. The ruling was based on the trial court's findings that the warnings given were inadequate [3] and that the police had failed to honor the defendant's attempt to assert his right to remain silent.[4] Since that ruling, the United States Supreme Court held in *Colorado v. Connelly*, —— U.S. ——, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), that the prosecution bears the burden of proving waiver of *Miranda* rights by only a preponderance of the evidence.

**3.** We note that *Miranda* warnings were read to the defendant from the Spanish portion of the police department form. If those warnings are determined to be adequate under the preponderance of the evidence standard, a finding that subsequent warnings were inadequate will not preclude a finding of waiver. *People v. Chase*, 719 P.2d 718, 721 (Colo.1986) (repeated warnings not indispensable to a finding of waiver).

**4.** The trial court also found that the defendant's assertion of his right to remain silent was not honored by the interrogating officers as evidenced by two parts of the videotaped interview. The court did not specify which parts of the interview support its finding. Although the

Because the trial court applied an erroneous standard, we remand this case for reconsideration in light of the waiver standard enunciated in *Colorado v. Connelly*.[5]

For the foregoing reasons, the suppression order is vacated and the case is remanded for such further proceedings as may be appropriate for disposition of the defendant's motion based upon application of the correct legal standards.

defendant's statements may indicate some unwillingness to talk to interrogating officers, after examination of the entire interview under the preponderance of the evidence standard enunciated in *Colorado v. Connelly*, —— U.S. ——, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), the trial court may determine there was a valid waiver.

**5.** The trial court properly evaluated the voluntariness issue under a preponderance of the evidence standard. *Colorado v. Connelly*, —— U.S. ——, 107 S.Ct. 515, 93 L.Ed.2d 473; *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).