The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Julian Arthur TRUJILLO, Defendant–Appellee.

No. 89SA185.

Supreme Court of Colorado, En Banc.

Jan. 16, 1990.

---

G.F. Sandstrom, Dist. Atty. and Frederick N. Mattoon, Chief Deputy Dist. Atty., Pueblo, for plaintiff-appellant.

Ted J. Malouff, Pueblo, for defendant-appellee.

Chief Justice QUINN delivered the Opinion of the Court.

In this interlocutory appeal, the People challenge a ruling of the district court suppressing a statement made by the defendant, Julian Arthur Trujillo, to a police officer during a stationhouse interview and also suppressing a shotgun and shotgun shells recovered by the officer during the interview. The district court ruled that the interview constituted custodial interrogation which should have been preceded by a proper advisement and waiver of *Miranda* rights[1] and that the shotgun and shells were the fruit of the illegal interrogation. We affirm the suppression ruling.

The defendant is charged in a two-count information with the crimes of second degree assault and felony menacing allegedly committed against Steven Archuletta on or about November 5, 1988. The defendant entered a not guilty plea to the charges and filed a motion to suppress a statement made by him to Officer Frank Holderman on the basis that the statement was obtained in violation of his privilege against self-incrimination and his right to effective assistance of counsel as guaranteed by the United States and Colorado Constitutions.

At a pretrial suppression hearing the evidence established the following facts. Steven Archuletta filed a report with the Pueblo Police Department in which he stated that the defendant had fired a shotgun at his automobile sometime during the early morning of November 5, 1988. Officer Holderman was assigned to conduct an investigation of Archuletta's report and went to the defendant's home on November 7 to question the defendant about the incident. The defendant was not home at this time, and the officer told the defendant's mother that her son was a suspect in an assault and asked her to tell the defendant to contact him when the defendant returned home. While at the defendant's home, the officer observed a vehicle that matched the description of the automobile involved in the assault. The defendant's mother told the officer that the vehicle belonged to her, and she permitted the officer to search the automobile. The officer found a spent twenty-gauge shotgun shell in the trunk of the automobile.

Later in the day the defendant telephoned Officer Holderman at police headquarters. The officer told the defendant that he wanted to speak to him because he (the defendant) was a suspect in a shooting. The defendant agreed to come to the police station. Upon his arrival at the station at approximately 6:30 p.m., the officer directed the defendant to a small interview room where he conducted an interview of the defendant for approximately one and one-half hours. At no time either before or during the interview did the officer advise the defendant of his *Miranda* rights or tell the defendant that he was free to leave at any time.

The officer questioned the defendant at length about the shooting incident. The defendant basically told the officer that prior to the shooting incident he had a confrontation with Archuletta in a bar. Because Archuletta had made threats against the defendant's mother, the defendant went home, told his mother to call the

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

police, and obtained a shotgun. When Archuletta and another man later drove up to the defendant's house and shouted a threat to "get this punk," the defendant fired the shotgun at Archuletta's vehicle.

During the stationhouse interview Officer Holderman told the defendant that he needed to obtain the shotgun as evidence. The officer asked the defendant to accompany him to the defendant's home, and the defendant agreed to do so. Prior to the trip, however, the officer took a photograph of the defendant for his investigative file. The officer also asked the defendant if he would be willing to submit to a polygraph exam, and the defendant answered that he would.

Upon arriving at the defendant's home, the defendant produced a shotgun and shells which the officer took into his possession. The officer drove the defendant back to the police station and told him that a report would be filed and the matter would be referred to the district attorney. The defendant then was permitted to leave the police station at approximately 8:50 p.m.

At the suppression hearing the officer testified that the defendant was very cooperative during the interview and did not appear to be intimidated in any way. The defendant, on the other hand, testified that he believed he was required to talk to the officer and did not have the right to decline to answer the officer's questions. He further testified that he was not aware that he had the right to confer with a lawyer before talking to the officer and did not realize that he was free to leave the police station until the end of the interview when the officer told him that he could leave.

In granting the motion to suppress, the district court made extensive findings of facts which basically recited the above sequence of events. In ruling that the defendant had been subjected to a custodial interrogation without having been advised of his *Miranda* rights, the court remarked as follows:

The manner of the interview was congenial and the Defendant was not restrained, but the time, place, and purpose suggest that it was custodial. The accusatory nature of the questions is pivotal to this Court's determination. Defendant was talking to stay out of jail. He wasn't sure he was free to leave until he was allowed to do so. A reasonable person would consider himself significantly deprived of his liberty in these circumstances. The statements are voluntary but without proper *Miranda* advisement.

In urging reversal of the suppression ruling, the People contend that the district court erred in determining that the interview at the police station constituted a custodial interrogation. In support of their contention the People assert that the court improperly focused on one factor only—the defendant's fear of being arrested—to the exclusion of other factors underlying the stationhouse interview.

In *Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that prior to any custodial interrogation a suspect must be adequately informed that he has a right not to say anything, that anything he does say can be used against him in court, that he has a right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires. *See Duckworth v. Eagan*, — U.S. ——, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989); *California v. Prysock*, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981); *People v. Hopkins*, 774 P.2d 849 (Colo. 1989). A person subjected to custodial interrogation may waive these rights as long as the waiver is knowingly, intelligently, and voluntarily made. *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612.

The term "interrogation" under *Miranda* refers not only to express questioning by a police officer, but also to any words or actions on the part of the officer that the officer "should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). The determination of whether an officer's words or actions are "reasonably likely to elicit an

incriminating response" turns primarily "upon the perceptions of the suspect, rather than the intent of the police [officer]." *Id.* at 301, 100 S.Ct. at 1690. Focusing on the perception of the suspect is designed to provide a person in police custody, in a manner consistent with *Miranda,* with "an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police." *Id.* The record before us unequivocally establishes that the defendant was subjected to "interrogation" by Officer Holderman at the stationhouse, and no question is raised here on that aspect of the case.

What is at issue is whether the questioning of the defendant was "custodial" for purposes of the *Miranda* warnings. In determining whether a suspect has been subjected to a custodial interrogation, a court must consider the totality of circumstances surrounding the interrogation. While an inquiry into the totality of circumstances necessarily will be open-ended, the more prominent factors for consideration include the following:

> the time, place and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; whether directions were given to the defendant during the

interrogation; and the defendant's verbal or nonverbal response to such directions. *People v. Thiret,* 685 P.2d 193, 203 (Colo. 1984).

■ A trial court's ruling on the issue of custody for purposes of the *Miranda* warnings must be based on an application of the controlling legal standard to the historical facts as found by the court. The *Miranda* warnings are required when a person is subjected to police interrogation after having been taken into custody or otherwise deprived of his freedom of action in a significant way. *Miranda,* 384 U.S. at 476–77, 86 S.Ct. at 1629. A person obviously is "in custody" when that person has been subjected to the constraints associated with a formal arrest. The *Miranda* requirements, however, are not limited to formal arrests, but also include police interrogations conducted under circumstances where the person interrogated has been significantly deprived of his freedom of action.[2] In determining whether *Miranda* warnings are required under such circumstances, we have employed an objective test—that is, whether a reasonable person in the suspect's position would consider himself deprived of his freedom of action in a significant way during a police interrogation in which the suspect was exposed to the risk of self-incrimination. *People v. Cleburn,* 782 P.2d 784, 786 (Colo.1989); *People v. Sandoval,* 736 P.2d 1201, 1203 (Colo.1987); *People v. Thiret,* 685 P.2d at 203; *People v. Black,* 698 P.2d 766, 768 (Colo.1985).

The People in this appeal have no quarrel with the legal standard utilized by the

**2.** The United States Supreme Court has taken a fact-specific approach in determining whether, for purposes of *Miranda,* a person subjected to police questioning had been deprived of his freedom in a significant way. *See Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (roadside questioning of motorist detained pursuant to routine traffic stop not custodial interrogation, since stop was temporary and did not subject motorist to constraints comparable to formal arrest); *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (probation officer's interview of probationer at probation office, as requested by officer, not custodial interrogation because interview did not place probationer in environment comparable to custodial arrest);

*California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam) (where police tell defendant that he is not under arrest, but defendant voluntarily agrees to accompany police to stationhouse for questioning, defendant's incriminating statements at stationhouse not the product of custodial interrogation); *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969) (*Miranda* applicable to situation where defendant was questioned in his bedroom by four police officers at 4:00 a.m. about fatal shooting of victim during quarrel inside restaurant earlier in the evening, since defendant was not free to leave during questioning and thus was deprived of his freedom in a significant way).

court in its suppression ruling. Rather, the People take issue with the trial court's findings of fact and, in that respect, argue that the court failed to consider the totality of circumstances in making its findings of fact. We reject the People's claim.

■ It is plain beyond argument that the trial court properly considered the totality of circumstances in ruling on the suppression motion. The court expressly noted in its ruling that the time, place, and purpose of the interrogation gave the questioning a custodial quality. The record shows that the questioning lasted approximately one and one-half hours and was conducted in a stationhouse interview room with only the officer and the defendant present during the interview. Moreover, it is undisputed that the purpose of the interrogation was to gather evidence against the defendant and refer the matter to the district attorney for the possible filing of criminal charges. In its ruling, the trial court also placed significance on the words spoken by the officer to the defendant, remarking in this respect that the questions put to the defendant were accusatory in nature. These questions included not only an inquiry into the facts of the shooting but also a request to submit to a mug shot, an inquiry into the defendant's willingness to take a polygraph exam, and a request to produce the shotgun and shells which the officer needed as evidence. Although the officer's tone of voice and general demeanor were at all times polite and no physical restrictions were placed on the defendant, the record shows that the officer assumed a dominant role during the interview and subsequent trip to the defendant's home. Indeed, as the court noted in its ruling, the defendant "was talking to stay out of jail" and was not certain "he was free to leave until permitted to do so" by the officer. Simply stated, the record refutes the People's claim that the trial court improperly focused only on the defendant's fear of arrest, to the exclusion of other circumstances, in ruling on the motion to suppress.

We take this occasion to emphasize once again that the issue of custody is essentially a factual question that involves a trial court's assessment of the credibility of witnesses and a weighing of their testimony. *See Cleburn,* 782 P.2d at 786–87; *People v. Johnson,* 671 P.2d 958, 962 (Colo.1983). Our role as an appellate court is to review the record and determine whether the trial court's findings of historical fact are adequately supported by competent evidence and whether the court applied the correct legal standard to these findings in resolving the issue before it. *E.g., Cleburn,* 782 P.2d at 786–87; *People v. Quezada,* 731 P.2d 730, 732 (Colo.1987); *People v. Johnson,* 681 P.2d 524, 525 (Colo.1984). Where, as here, the historical findings are adequately supported by competent evidence, and where, as here, the trial court applied the correct legal standard to those findings in suppressing evidence, we will not overturn the court's suppression ruling.

The suppression ruling is accordingly affirmed.