The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Lupy TRUJILLO, Defendant–Appellee.

No. 89SA160.

Supreme Court of Colorado,
En Banc.

Jan. 29, 1990.

G.F. Sandstrom, Dist. Atty., and Frederick N. Mattoon, Deputy Dist. Atty., Pueblo, for plaintiff-appellant.

William J. Ballas, Pueblo, for defendant-appellee.

Chief Justice QUINN delivered the Opinion of the Court.

The People, pursuant to C.A.R. 4.1, appeal from a ruling suppressing a statement made by the defendant, Lupy Trujillo, to a police officer during a stationhouse interrogation which was conducted pursuant to the officer's request and at which the defendant admitted the sale of a stolen video cassette recorder to a pawnbroker. In suppressing the statement, the district court ruled that the defendant had been subjected to a custodial interrogation in violation of the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We conclude that the district court utilized an incorrect legal standard in suppressing the defendant's statement, and we accordingly reverse the ruling and remand the case to the district court for further proceedings.

The facts are undisputed. A pending criminal information alleges that on November 18, 1988, the defendant knowingly and falsely reported to a pawnbroker, Alley Post Pawn and Loan, that she was the owner of a Mitsubishi video cassette recorder and sold the recorder to the pawnbroker in violation of sections 18–16–105 and 18–16–108, 8B C.R.S. (1986), and that on that same date the defendant conspired to commit that crime with some unknown person in violation of section 18–2–201, 8B C.R.S. (1986). After a preliminary hearing in which probable cause was found on both counts, the defendant filed a motion to suppress a statement made by her to Officer Bradford of the Pueblo Police Department. As pertinent to this appeal, the motion to suppress was based on the claim that the officer conducted a custodial interrogation without having previously advised the defendant of her *Miranda* rights.

Officer Bradford was the only witness who testified at the suppression hearing. He stated that he has been a police officer for sixteen years and in November 1988 was assigned to "special operations." On November 28, in the course of checking pawnshop records at Alley Post Pawn and Loan in the city of Pueblo, he determined that ten days previously the defendant had pawned a video cassette recorder that had been reported as stolen in a burglary committed in 1987. The officer was not successful in attempting to contact the defendant at her home, so he left a note informing the defendant that he wanted to talk to her. The officer could not remember with certainty whether the defendant telephoned him, but testified that if she did call him he probably told her to come to the police station so that he could talk to her about a stolen video cassette recorder. The defendant appeared at the police station accompanied by her husband on November 30, 1988.

Officer Bradford told the defendant's husband to remain in a waiting room and then directed the defendant to a downstairs room. The officer told the defendant that the video cassette recorder pawned by her had been reported as stolen and asked her to tell him how she came into possession of the recorder. The defendant basically made the following statement to the officer: a party named Leonard Gomez came to her house and told her that he had lost his identification; Gomez asked her to pawn the recorder for him; the defendant agreed to do so and Gomez drove her to Alley Post and Loan where she pawned the video cassette recorder.

Officer Bradford testified that the defendant was free to leave the interview at any time, although he acknowledged in his testimony that he could not specifically recall whether he told the defendant that she could do so. After the interview the officer informed the defendant that he would file a report with the district attorney's office. The defendant then left the police station. At no time either before or during

the interview did Officer Bradford advise the defendant of her *Miranda* rights.

At the conclusion of the evidence, the trial court initially entered an oral ruling from the bench and stated that it would later issue a written ruling on the motion to suppress. In its oral ruling, the court stated that the issue of whether the defendant had been subjected to a custodial interrogation depended on the totality of circumstances surrounding the interrogation and "the subjective mind of the defendant." The court remarked that the combination of Officer Bradford's sixteen years experience as a police officer and his ability to easily advise the defendant of her *Miranda* rights, as well as the officer's focus on the defendant as a suspect and the fact that the interrogation was conducted in a downstairs room with only the officer and the defendant being present, "would lead anyone at that point to believe that they were subject to a custodial interrogation." The court granted the defendant's motion to suppress and stated that it later would issue a written ruling. In its written ruling, issued the same day, the court again outlined the factual circumstances surrounding the interrogation and confirmed its earlier oral ruling, stating as follows:

> Although the defendant came to the Pueblo Police Department on November 30th, 1988 voluntarily, and although no threats or promises were made to her and no arrest actually made, the Court is still of the opinion that a custodial interrogation took place, which required a prior statement to the defendant of her *Miranda v. Arizona* rights.
>
> This determination is based upon the totality of circumstances surrounding this particular interrogation and the defendant's subjective belief that she was not free to stop Officer Bradford's questioning or leave the Pueblo Police Department at any time. In fact, Officer Bradford testified that he does not recall whether he told the defendant that she was free to leave and stop his questioning whenever she so desired....

The People in this appeal claim that the trial court erred in applying the defendant's "subjective state of mind," rather than the "reasonable person" standard, in resolving the issue of custodial interrogation for purposes of the *Miranda* warnings. We agree with the People's claim.

■ . Prior to conducting a custodial interrogation, a police officer is obliged to adequately inform a suspect of the following rights: that the suspect has a right not to say anything; that anything she says can be used against her in court; that she has a right to the presence of an attorney; and that if she cannot afford an attorney one will be appointed for her prior to any questioning if she so desires. *Miranda,* 384 U.S. at 478–79, 86 S.Ct. at 1629–30; *see Duckworth v. Eagan,* — U.S. —, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989); *California v. Prysock,* 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981); *People v. Hopkins,* 774 P.2d 849 (Colo.1989); *People v. Trujillo,* 784 P.2d 788, 791 (Colo.1990). A suspect may waive these rights, but any waiver must be knowingly, intelligently, and voluntarily made, and unless and until such warnings and waiver are demonstrated, any statement made by the suspect is not admissible at trial. *Miranda,* 384 U.S. at 479, 86 S.Ct. at 1630. In resolving a suppression motion involving a police interrogation, a court must consider the totality of circumstances surrounding the interrogation. *E.g., People v. Trujillo,* 784 P.2d 788, 791 (Colo.1990); *People v. Cleburn,* 782 P.2d 784, 786 (Colo.1989); *People v. Thiret,* 685 P.2d 193, 203 (Colo.1984). The more prominent factors for consideration include the following:

> the time, place and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; whether directions were given to the defendant during the interrogation; and the defendant's verbal or nonverbal response to such directions.

*Trujillo,* 784 P.2d at 791 (quoting *Thiret,* 685 P.2d at 203).

█ A person who is interrogated after having been taken into police custody in a manner similar to a formal arrest clearly has been subjected to custodial interrogation. *Miranda,* 384 U.S. at 476–77, 86 S.Ct. at 1628–29. The *Miranda* requirements also apply to police interrogations conducted under circumstances where the person interrogated has been deprived of her freedom of action in a significant way. *Id.* Just as a police interrogation at a stationhouse does not necessarily render the interrogation custodial for purposes of the *Miranda* warning, *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), so too the fact that the interrogation is conducted in the suspect's home does not necessarily render it noncustodial, *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969).

█ In determining whether a person has been deprived of her freedom of action in a significant way, we have utilized an objective "reasonable person" standard— that is, whether a reasonable person in the suspect's position would have considered herself deprived of her freedom of action in a significant way during a police interrogation in which the suspect was exposed to the risk of self-incrimination. *E.g., Trujillo,* 784 P.2d at 791; *People v. Cleburn,* 782 P.2d 784, 786 (Colo.1989); *People v. Sandoval,* 736 P.2d 1201, 1203 (Colo.1987); *People v. Black,* 698 P.2d 766, 768 (Colo.1985); *Thiret,* 685 P.2d at 203. Neither the subjective state of mind of the officer conducting the interrogation nor the suspect's mental state is determinative of whether a reasonable person in the suspect's situation would have considered the interrogation to be custodial. *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *see also Cleburn,* 782 P.2d at 786; *People v. Black,* 698 P.2d 766, 768 (Colo. 1985). The "reasonable-person" standard is a controlling test because, unlike a subjective test, it "is not solely dependent either on the self-serving declarations of the police officers or the defendant nor does it place upon the police the burden of antici-

pating the frailties or idiosyncracies of every person whom they question." *Berkemer,* 468 U.S. at 442 n. 35, 104 S.Ct. at 3151 n. 35 (quoting *People v. P.,* 21 N.Y.2d 1, 9–10, 286 N.Y.S.2d 225, 230, 233 N.E.2d 255, 260 (1967)). A court's ruling on a *Miranda* suppression motion, therefore, must specifically answer the question whether a reasonable person in the suspect's position would have considered herself deprived of her freedom of action in a significant way during the police interrogation under consideration.

█ In this case, the trial court considered all the evidence submitted at the suppression hearing in determining the historical facts surrounding the interrogation, but utilized an incorrect legal standard in granting the defendant's motion to suppress. Although in its oral ruling from the bench the court stated that the combination of factors surrounding the interrogation "would lead anyone to believe that at that point they were subject to a custodial interrogation," we do not interpret this remark as an indication of the court's intent to resolve the suppression motion on the basis of the "reasonable person" standard. The court's express reference to the "subjective mind of the defendant" in its oral ruling and the court's unequivocal adoption of that same subjective standard in its written ruling presents a compelling case of the application of "the defendant's subjective state of mind" standard in resolving the issue of custodial interrogation. The defendant's subjective state of mind, however, is not a valid proxy for resolving whether a reasonable person in the defendant's situation would have considered herself deprived of her freedom of action in a significant way during the interrogation under consideration. The trial court's utilization of an incorrect legal standard in resolving the suppression motion, therefore, invalidates the suppression ruling.

Under the circumstances of this case, the appropriate disposition of this appeal is to remand the case to the district court for resolution of the suppression motion under the correct legal standard. The district court at its discretion may enter its ruling

based on the evidentiary state of the record previously made or may permit the parties to supplement the record by offering additional evidence.

The suppression ruling is accordingly reversed and the case is remanded to the district court for further proceedings consistent with the views herein expressed.