The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Daniel Jay PROBASCO,
Defendant–Appellee.

No. 90SA84.

Supreme Court of Colorado,
En Banc.

Sept. 10, 1990.

Jon M. Bailey, Dist. Atty., Thirteenth Judicial District, Sterling, for plaintiff-appellant.

Bruno, Bruno & Colin, P.C., Louis B. Bruno, Earl S. Wylder, Lakewood, for defendant-appellee.

Justice ERICKSON delivered the Opinion of the Court.

In this interlocutory appeal, pursuant to C.A.R. 4.1, the prosecution seeks to overturn an order of the district court suppressing certain statements made by the defendant, Daniel J. Probasco. The statements were made by the defendant, a deputy sheriff, to fellow police officers while he was seated in his police vehicle. The district court held that the statements were the product of interrogative questioning in a custodial setting, without the benefit of *Miranda*[1] warnings, and therefore violated the defendant's constitutional rights. We reverse the suppression order and remand to the trial court for further proceedings consistent with this opinion.

## I.

On July 15, 1989, at 1:16 a.m., the defendant, Morgan County Deputy Sheriff Daniel Probasco, radioed that he was making a traffic stop. A short time later, he requested assistance, and officers from both Fort Morgan and Morgan County responded.

Upon arriving at the scene, the officers found Probasco's car, with its emergency lights on and engine running, but could not locate Officer Probasco. Within a few minutes, the police dispatcher relayed a 911 call that shots were fired within a short distance from Probasco's patrol car. The officers went to that location and found Probasco kneeling over the body of Daniel E. Smith. Smith's head was bleeding profusely, and he had been shot. Police Sergeant Bruce Ringo, who was the first to take charge of the investigation, asked Probasco to step back and began efforts to resuscitate Smith. According to Officer Ringo, the defendant was shaken up and was "overwhelmed with what was going on." Ringo asked another officer to accompany the defendant back to the defendant's patrol car and to wait with him there. Probasco and two other officers went to Probasco's patrol car. A third officer, Leon Smith, joined the defendant and the two other officers a short time later.

At the suppression hearing, Officer Smith testified that he noticed Probasco's radio and baton on the porch of a nearby house. Smith asked Probasco "how his stick and his radio wound up on the porch?" Smith said that he asked the question just "to start up a conversation" and that he had joined Probasco and the other officers to "make sure that Officer Goebel and Dan Probasco were ok." It was then that the defendant replied "[l]et me tell you what happened." Probasco stated that he had stopped the driver, and that while talking to him, the driver shoved him and ran away. Probasco chased the driver for a block or so, found him under some bushes hiding, drew out his pistol and ordered the man to remain where he was. Probasco stated that Smith began to get up, "struck the end of his weapon and the weapon went off on him." Smith later died as a result of being shot in the head.

The defendant was not placed under arrest, and was not given the *Miranda* warning before or after he made the statement. Probasco was subsequently charged with criminally negligent homicide.[2]

The defendant, relying on *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), moved to suppress the statements. Following a hearing, the dis-

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. § 18-3-105, 8B C.R.S. (1986).

trict court granted the defendant's motion and ordered that the statements be suppressed.

## II.

*Miranda v. Arizona* requires a four-fold warning prior to custodial interrogation to ensure that the accused is advised of his right to counsel and of his right not to incriminate himself. *Miranda*, 384 U.S. at 478–79, 86 S.Ct. at 1630. Before *Miranda* is applicable, however, there must be both interrogation by the police, and "custody." *Id.* The issue in *People v. Trujillo*, 784 P.2d 788 (Colo.1990), was when does police questioning become custodial interrogation. Under the facts in *Trujillo*, questioning by a police officer in a police interview room amounted to custodial interrogation and required *Miranda* warnings. Whether Probasco's answers to the question asked by a fellow officer were the product of custodial interrogation is the issue in this case.

## III.

■ The prosecution claims both that the question asked Probasco did not amount to interrogation, and that Probasco was not in custody at the time he made his statement. In *Trujillo*, we stated that interrogation referred "not only to express questioning by a police officer, but also to any words or actions on the part of the officer that the officer 'should know are reasonably likely to elicit an incriminating response from the suspect.'" *Trujillo*, 784 P.2d at 790 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1670, 64 L.Ed.2d 297 (1980)). The district court found that Officer Smith's question regarding "how his [the defendant's] stick and radio wound up on the porch" constituted interrogation under the *Innis* and *Trujillo* standard. Though such a question, from one officer to another, is not of the adversarial nature normally associated with police interrogation, Officer Smith reasonably should have expected the defendant to answer with some kind of an explanation—which is precisely what happened. Any explanation of the events leading up to the shooting could be potentially incriminating, and would

therefore be the very kind of statement that *Miranda* was intended to protect. Here, the district court correctly found that the question amounted to interrogation. The more difficult issue is whether the questioning occurred while Probasco was in custody.

## IV.

■ Custody includes, but is not limited to, the situation in which the defendant is actually placed under arrest. It is conceded that Officer Probasco was not under arrest at the time he made the statement to Officer Smith. Interrogation is also custodial, however, whenever the defendant is "deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. In *Trujillo*, we stated that a court must "consider the totality of the circumstances surrounding the interrogation" in order to determine whether a "reasonable person in the suspect's position would consider himself deprived of his freedom of action in a significant way...." *Trujillo*, 784 P.2d at 791. Factors include:

> The time, place and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; whether directions were given to the defendant during the interrogation; and the defendant's verbal or nonverbal response to such directions.

*People v. Thiret*, 685 P.2d 193, 203 (Colo. 1984). As we stated in *Trujillo*, our role is to examine the record and determine whether the district court applied the correct legal standard and, if so, whether the ruling is "adequately supported by competent evidence." *Trujillo*, 784 P.2d at 792.

In ruling that the interrogation of Probasco was custodial, the district court found that when viewing the totality of the circumstances, any reasonable person

would have considered "himself deprived of his freedom of action in a significant way." To reach that conclusion, the court relied on the time, place, and purpose of the encounter, and the *subjective understanding* of the defendant.

> [T]he defendant was first contacted over the body of the victim under circumstances implicating him in the death of the victim. The officers involved had received information through the dispatcher that there had been a problem on contact, and certainly the officers responding to the location of the defendant and the victim fully understood that it was something more than a mere traffic problem, ....

The court also focused on the defendant's statement that he did not want to say anything immediately after the other officers arrived and found the defendant leaning over the body. The court took this statement to mean that the defendant subjectively knew that he was not free to leave. While the defendant's verbal and nonverbal responses are a factor to be taken into consideration, we believe the district court was too limited in its examination.

*Miranda*'s protections seek to guard against involuntary incriminating statements made under the "inherently compelling pressures" present in custodial interrogations that "work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Minnesota v. Murphy*, 465 U.S. 420, 430, 104 S.Ct. 1136, 1143, 79 L.Ed.2d 409 (1984) (quoting *Miranda*, 384 U.S. at 467, 86 S.Ct. at 1624). In *Murphy*, the Court said that "[w]e have consistently held, however, that this extraordinary safeguard does not apply outside the context of the inherently coercive custodial interrogations for which it was designed." *Murphy*, 465 U.S. at 430, 104 S.Ct. at 1144 (citations omitted). The Court reaffirmed *Miranda*'s limited application last term in *Illinois v. Perkins*, — U.S. —, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990). In *Perkins*, the Court stated that *"Miranda* forbids coercion,"

and acknowledged that "confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without compelling influences is, of course, admissible in evidence." *Id.* — U.S. at —, 110 S.Ct. at 2397 (citations omitted). *Perkins* held that *Miranda* warnings were not required when an undercover police officer was sent into a cell to ask a prisoner questions designed to elicit incriminating statements concerning a separate crime, even though the defendant was clearly in custody and the questions fit the general definition of interrogation. "Coercion is determined from the perspective of the suspect, ... [and] [w]hen a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking." *Id.* (citations removed).

Although *Perkins* is distinguishable from the present case, the fact that Probasco was a police officer cannot be ignored. In this case, rather than fellow cellmates as in *Perkins*, Probasco was surrounded by his fellow police officers, men that he worked with daily and that were there, according to Officer Smith, trying to calm him down and tell him that everything would be all right. There is nothing in the record to indicate that any of the officers were trying to coerce an incriminating statement from Probasco.

 We do not challenge the well-founded rule that once a suspect is confronted with custodial interrogation, his occupation has no bearing on whether he is entitled to *Miranda* warnings.[3] "The requirement of *Miranda* warnings is not contingent upon a defendant's actual or presumed knowledge of his rights or on his status but, rather, must be honored in all instances of custodial interrogation." *United States v. Longbehn*, 850 F.2d 450 (8th Cir.1988). But that is not the issue in this case. Rather, the issue is whether Probasco was in custody, and Probasco's status as a police officer is relevant to that question.

---

3. The fact that Probasco was a police officer, and therefore presumed to be familiar with his constitutional rights, would be irrelevant.

■ The test for determining whether a person is in a custodial setting is "whether a reasonable person *in the suspect's position* would consider himself deprived of his freedom in a significant way." *People v. Milhollin*, 751 P.2d 43, 49 (Colo.1988) (emphasis added). The objective question here is whether a reasonable police officer, in Probasco's position, would consider himself to be deprived of his freedom in a significant way.

A court "must examine the facts and circumstances surrounding the situation to determine whether the *Miranda* protections apply in any given situation," and that determination "must be made on a case by case basis." *People v. Wallace*, 724 P.2d 670, 673 (Colo.1986). The fact that Probasco was a police officer makes this situation unique.

■ The reason for the original contact between Probasco and his fellow officers was, quite simply, because the defendant himself was an on-duty police officer that had called for assistance. There is nothing in the record to suggest that the responding officers had any suspicion that Probasco had committed any wrong. The trial court relied on the fact that Probasco was first found standing over the body. Nothing in the record supports a claim that Probasco reasonably believed that he was suspected of wrongdoing. *See New Jersey v. Bode*, 108 N.J.Super. 363, 261 A.2d 396 (1970) (police officer called aside by police chief to discuss officer's theft of merchandise not in custody).

The trial court also relied on the testimony that Probasco was in a state of shock, and did not want to say anything, "at least suggest[ing] that he had some consciousness perhaps of a custodial type arrangement and that he was not free to leave." While such a reaction may be relevant, a suggestion alone is not enough to find that the defendant was in custody.

The trial court found that "[i]t's apparent from the Sergeant's [Officer Ringo's] testimony that subjectively, in the police, law enforcement's mind the defendant was not free to go anywhere." We held in *People v. Wallace*, 724 P.2d at 673, that "the police officer's subjective state of mind is not an appropriate standard for determining whether an individual has been deprived of his freedom of movement in any significant way." In *People v. Black*, 698 P.2d 766 (Colo.1984), we found that "testimony by a police officer that he would not have allowed the defendant to leave the scene of the accident has no bearing on the custody issue where the officer does not communicate his intention to the suspect." The trial court here incorrectly relied on Officer Ringo's testimony that Probasco was not free to leave. Officer Ringo testified that Probasco was not free to leave for a variety of reasons, including that he might be a witness, that his uniform and weapon might be evidence, and that he "*could* possibly be a suspect." Therefore, Officer Ringo's testimony does not establish Probasco's claim that he was in custody.

The trial court stated that a reasonable person sitting in a police car and surrounded by three other officers would feel that his freedom was curtailed. As we said in *People v. Garrison*, 176 Colo. 516, 491 P.2d 971 (1971), however, "the fact that the defendant was asked to sit in a police car does not turn investigation into custody...." 176 Colo. at 519–20, 491 P.2d at 973. Further, in this case, the defendant was asked to sit in *his* police car, which is not a "coercive environment." A reasonable police officer, under these circumstances, would believe that he was simply following the orders of a superior in his place of employment. *See United States v. Goudreau*, 854 F.2d 1097, 1098 (8th Cir. 1988) (police officer, ordered to go to F.B.I. office and testify in civil rights case, was not in custody for *Miranda* purposes). In *United States v. Dockery*, 736 F.2d 1232 (8th Cir.), *cert. denied*, 469 U.S. 862, 105 S.Ct. 197, 83 L.Ed.2d 129 (1984), the Eighth Circuit found that a bank employee was not in custody when she was ordered, by her employer, to accompany F.B.I. agents to an office as part of an investigation into bank embezzlement. *Id.* at 1235. "Ordinarily, when people are at work their freedom to move about has been meaningfully restricted, not by the actions of law enforcement

officials, [ ] but by the workers' voluntary obligations to their employers." *Id.* at 1234 (quoting *Immigration & Naturalization Serv. v. Delgado,* 466 U.S. 210, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reasonable police officer would not have believed that he could leave the scene of a shooting, which he was involved in, regardless of whether he was a suspect or not. The very fact that Probasco was an on-duty police officer involved in a shooting mandated that he stay on the scene and report to his superiors.

As in *Dockery,* Probasco was "never handcuffed, physically abused, or threatened." 736 F.2d at 1234. In *Dockery,* there was no custody even though the door to the room was shut and the employee was told that she was under investigation. Nor is a defendant's freedom curtailed in a significant way when the police have taken his license and registration, and have asked him to describe an automobile accident. *People v. Black,* 698 P.2d at 768–69.

The question posed here is no different than in *Wallace,* where the police officer approached the defendant at the scene of an automobile accident and asked him "what happened?" 724 P.2d at 674.

In short, there is nothing in the findings of fact that support the trial court's conclusion that a reasonable person in the suspect's position would have believed that his freedom was curtailed in a meaningful way. In *United States v. Hall,* 421 F.2d 540, 545 (2d Cir.1969), *cert. denied,* 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970), the court of appeals held that

> in the absence of actual arrest, something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning which indicates that they would not have heeded a request to depart or to allow the suspect to do so.

There is simply nothing in the record, beyond normal employment obligations tied to Probasco's service as Deputy Sheriff, that would support a finding that Probasco was in custody. Probasco does not contend that his statement to his fellow officer was not voluntary. *See People v. Mounts,* 784 P.2d 792, 796–97 (Colo.1990).

Officer Smith also testified that the officers sitting in the car with the defendant were trying to calm him down and telling him that everything would be all right. A reasonable civilian sitting in that police car might have believed that he was in custody, but the reasonable police officer, while on duty, sitting in his police car with fellow officers that were also his friends, would not be likely to believe that his freedom of action was limited in a significant way.

The words spoken to the defendant and the other officers' general tone and demeanor were anything but harsh or threatening. The officer that asked the question testified that the reason he was there was to see if Probasco was all right. There is nothing in the record to indicate that the officer intended to interrogate Probasco, or that he was even directly involved with the investigation. The one question asked did nothing to lead a reasonable person to believe he was in custody, and the only direction given to the defendant was to go back to his car, thereby removing himself from a scene that the record reflected made him very uneasy and distraught. The totality of the circumstances could not, under these unique facts, amount to a finding that there was a custodial interrogation of the defendant.

*Miranda*'s protections were meant to guard against the "compulsion inherent in custodial surroundings." *Miranda,* 384 U.S. at 458, 86 S.Ct. at 1619. Because a reasonable person in the defendant's circumstances would not have believed that he was in custody, no *Miranda* warnings were required.

As we said in *Milhollin,* a trial court's findings of fact are entitled to deference. "An ultimate conclusion of constitutional law that is inconsistent with or unsupported by evidentiary findings, however, is subject to correction by a reviewing court, . . . ." 751 P.2d at 50. Here, the trial court's conclusion that Probasco was in custody at the time he made an incriminating statement, and therefore was entitled to *Miranda* warnings, cannot be

squared with that court's findings of fact. We conclude, therefore, that this was not a custodial setting, and that Probasco's statements should not have been suppressed.

Accordingly, the order of suppression is reversed, and the case is remanded for further proceedings consistent with this opinion.

QUINN, J., dissents and LOHR, J., joins in the dissent.

Justice QUINN dissenting:

The issue in this interlocutory appeal is whether the defendant's statements to a fellow officer at the scene of a shooting were the product of custodial interrogation. The majority acknowledges that the evidentiary state of the record supports the trial court's finding that the defendant was subjected to interrogation, but then rejects the court's determination that the interrogation was custodial. In my view, the record contains adequate evidence to support the trial court's findings of fact and further demonstrates that the court applied the correct legal standard in resolving the suppression motion. I accordingly dissent.

## I.

In ruling on a motion to suppress a custodial statement, a trial court "must engage both in factfinding—a specific inquiry into the historical phenomena of the case— and law application, which involves the application of the controlling legal standard to the facts established by the evidence." *People v. Quezada*, 731 P.2d 730, 732 (Colo. 1987). The correct legal standard in resolving the issue of custodial interrogation is whether "a reasonable person in the suspect's position would consider himself deprived of his freedom of action in a significant way during a police interrogation in which the suspect was exposed to the risk of self-incrimination." *People v. Trujillo*, 784 P.2d 788, 791 (Colo.1990); *see People v. Cleburn*, 782 P.2d 784, 786 (Colo.1989); *People v. Thiret*, 685 P.2d 193, 203 (Colo. 1984). In resolving that question the court must consider the totality of circumstances surrounding the interrogation. *Trujillo*, 784 P.2d at 791; *Thiret*, 685 P.2d at 203.

Our role as reviewing court in passing on a suppression ruling is limited to reviewing the record in order to determine "whether the trial court's findings of historical fact are adequately supported by competent evidence and whether the court applied the correct legal standard to these findings in resolving the issue before it." *Trujillo*, 784 P.2d at 792. It is not our function to second-guess the trial court's assessment of the credibility of witnesses or the inferences reasonably drawn by the court in weighing the testimony presented at the suppression hearing.

## II.

The record in this case contains competent evidence to support the trial court's determination that the defendant was subjected to custodial interrogation at the scene of the shooting. Sergeant Ringo, who was the highest ranking officer at the scene of the shooting and was in charge of the investigation, testified that he instructed Officer Goebel to go with the defendant to the patrol car and stay with the defendant in the car. In response to the question whether the defendant was free to leave the scene at that time, Sergeant Ringo stated that he was not free to leave because, in Sergeant Ringo's view, he "could possibly be a suspect at that time." After Officers Goebel and Wood accompanied the defendant to the patrol car and were waiting there with him, Officer Smith arrived at the scene and, without having advised the defendant of his *Miranda* rights, questioned him about the circumstances surrounding the shooting. The defendant, who was described by Sergeant Ringo as being "overwhelmed with what was going on," responded in detail to Officer Smith's inquiry while he was seated in the police vehicle in the presence of the three officers.

The trial court's ruling, as evidenced by the following excerpt, refutes any notion that the court did not adequately consider the totality of circumstances in resolving the issue of custodial interrogation or that the court did not apply the correct legal

standard in ruling on the suppression motion.

The totality of the circumstances are, it seems to me, that the defendant was first contacted over the body of the victim under circumstances implicating him in the death of the victim. The officers involved had received information through the dispatcher that there had been a problem on a contact, and certainly the officers responding to the location of the defendant and the victim fully understood that it was something more than a mere traffic problem, that in fact a shot had been fired and heard and the victim and the defendant were together.... It's apparent to the Court that the defendant was in a state of some shock but was sufficiently aware of the difficulty of the situation that he stated he didn't want to visit with anybody. That at least suggests that he had some consciousness perhaps of the custodial type arrangement and that he was not free to leave.

\* \* \* \* \* \*

The officer in charge instructed two officers to accompany the defendant back to his car and to stay with him there. I think the words were "until further orders." It's apparent from the Sergeant's testimony that subjectively, in ... law enforcement's mind[,] the defendant was not free to go anywhere. He was free to go back to his car with the accompaniment of law enforcement officers. He was there with two officers. And it's apparent the third officer arrived on the scene as well when this question was given that elicited this long narrative of the occurrence.

[The defendant] was never told that he was not under arrest. He was never told that he was free to leave. There clearly was a lack of *Miranda* advisement. But nothing was conveyed to him in any way that would suggest that his freedom was not restricted in a fairly significant way, namely, he was one officer and he was basically surrounded by two officers and finally a third and then others moved in and out of the area.

It's really difficult for the Court to look at the totality of that situation and to think anything other than a reasonable person in that position would consider himself deprived of his freedom of action in a significant way. I'm not phrasing that too well, but the Court will find that a custodial situation did exist under the totality standard and under the objective standard. And in light of that, it's apparent under the *Miranda* decision and cases similar to *Miranda* there should have been no interrogation without first giving the *Miranda* warning and without securing a voluntary waiver of those *Miranda* rights, and that having failed to give that warning the statements made by the defendant must be suppressed.

It was a prerogative of the trial court in this case, in exercising its factfinding function, to evaluate the evidence and to determine the appropriate weight to be given those aspects of the evidence bearing on the issue of custodial interrogation. Because the district court's findings are supported by competent evidence in the record, and because the court applied the correct legal standard in resolving the suppression motion, the suppression ruling in this case should be affirmed.

### III.

The majority, in reaching a contrary result, places much weight on the fact that the defendant was an on-duty police officer at the time of the interrogation and concludes that "the reasonable police officer, while on duty, sitting in his police car with fellow officers that were also his friends, would not be likely to believe that his freedom of action was limited in a significant way." Maj. op. at 1335. The trial court, however, adequately considered the defendant's status as an on-duty police officer and determined that a reasonable person in the defendant's position "would consider himself deprived of his freedom of action in a significant way." Contrary to the majority, I do not view the trial court's ultimate conclusion as inconsistent with or unsupported by its evidentiary findings of fact.

**1338**

The Supreme Court made it abundantly clear in *Miranda* that the privilege against self incrimination is so fundamental to our constitutional scheme and the expedient of giving a warning as to the availability of the privilege so simple that it is not appropriate "to inquire in individual cases whether the defendant was aware of his rights without a warning being given." *Miranda,* 384 U.S. at 468, 86 S.Ct. at 1625. "[W]hatever the background of the person interrogated, a warning at the time of the interrogation is indispensable to overcome its pressures and to insure that the individual knows he is free to exercise the privilege at that point in time." *Id.* at 469, 86 S.Ct. at 1625. The fact that the defendant was a police officer, therefore, did not eliminate the need for a proper *Miranda* warning before questioning so long as a reasonable person in the defendant's position would have considered himself significantly deprived of his freedom of action during a police interrogation at the scene of a possibly serious crime in which the defendant obviously was implicated. The trial court's ruling in this case is totally consistent with the principle that in highly stressful situations, such as a custodial interrogation, a suspect's abstract knowledge of his rights well might be less important than his ability to cope with the pressures of the situation. W. White, *Defending Miranda: A Reply to Professor Kaplan,* 39 Vand.L. Rev. 1, 6 (1986). The *Miranda* warnings are calculated to enhance the ability of the suspect, whether a police officer or anyone else, to deal with those pressures by making him aware "not only of the privilege, but also of the consequences of foregoing it." *Miranda,* 384 U.S. at 469, 86 S.Ct. at 1625.

I would affirm the trial court's suppression ruling because that ruling is supported by competent evidence and is based on the application of the correct legal standard to the factual findings made by the court.

I am authorized to say that Justice LOHR joins in this dissent.