The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Caryn Marie SUTHERLAND,
Defendant–Appellee.

No. 94SA270.

Supreme Court of Colorado,
En Banc.

Dec. 19, 1994.

John W. Suthers, Dist. Atty., Fourth Judicial Dist., Joan E. Teslow, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Retherford, Mullen, Johnson & Bruce, Joseph F. Bennett, Colorado Springs, for defendant-appellee.

Justice VOLLACK delivered the Opinion of the Court.

The prosecution brought this interlocutory appeal pursuant to C.A.R. 3 and 4.1 to challenge an order entered by the El Paso County District Court. The district court suppressed a plastic vial containing crack cocaine discovered through a search of the person of the defendant, Caryn Sutherland (Sutherland), during an investigatory stop of a vehicle and the temporary detention of its occupants, and all inculpatory statements made by Sutherland to the police officers during the investigatory stop and during the custodial interrogation at the police station. Sutherland is charged with unlawful possession of a schedule II controlled substance (cocaine).[1] The district court held that her initial statement made during the investigatory stop was obtained without the police officer issuing a Miranda[2] warning. The district court accordingly found that the cocaine produced from the pat-down search of Sutherland was tainted by her initial statement obtained in violation of Miranda. The district court additionally concluded that her post-Miranda statements were the product of the initial illegal search.

We conclude that, under the specific circumstances of this case, the police officer had a reasonable basis for conducting an investigatory stop of the automobile. We therefore reverse the district court's ruling that the investigatory stop was improper. Further, based on the district court's limited findings of facts, we reverse the order of suppression and remand the case to the district court for additional findings of fact consistent with our opinion in People v. Dracon, 884 P.2d 712 (Colo.1994).[3]

## I.

Sutherland was charged in El Paso County District Court with unlawful possession of a schedule II controlled substance (cocaine) in violation of sections 18–18–405(2)(a)(I), 8B C.R.S. (1994 Supp.), and 18–18–204, 8B C.R.S. (1994 Supp.). Sutherland filed a motion to suppress the cocaine found on her person, her inculpatory statement which the police officers had obtained during the investigatory stop, and her subsequent statements made to the officer at the police station. In her motion, Sutherland alleged that the seizure of the cocaine from her body cavity was the product of an unconstitutional stop and

---

1. § 18–18–405(2)(a)(I), 8B C.R.S. (1994 Supp.); § 18–18–204, 8B C.R.S. (1994 Supp.).

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. The district court's ruling suppressing the initial pre-Miranda statement made by Sutherland to Officer Thrumston and the cocaine found on Sutherland's person has not been challenged by the prosecution in this appeal, and we need not address these issues now.

an unconstitutional search and seizure in violation of the Fourth Amendment to the United States Constitution and Article II, Section 7, of the Colorado Constitution. According to Sutherland, it was unreasonable for the officer to require her to get out of the car and that the scope of the detention exceeded the permissible scope of an investigatory stop. Sutherland further claimed that she was arrested without a warrant and without probable cause, and was therefore illegally detained.

The district court conducted a suppression hearing at which Officer Travis Thiede and Officer Terry Thrumston of the Colorado Springs Police Department testified. The following facts were established.

On April 8, 1994, at approximately 2:00 a.m., Officer Thiede, a uniformed police officer on patrol duty, stopped at a 7–Eleven convenience store and entered the store.[4] Officer Thiede, who was standing by the front cash register, observed a male customer, later identified as Brian Freeman (Freeman or "the driver"), enter the store and take an item off the shelf. According to Officer Thiede, Freeman appeared very nervous and kept glancing at him. Officer Thiede observed Freeman leave the store without paying for anything.[5]

Officer Thiede suspected that he had witnessed a theft and followed Freeman out of the store. Officer Thiede noticed Freeman get into the driver's side of a Lincoln Town Car that was parked in front of the store. Officer Thiede also observed two passengers in the car: Sutherland, seated in the front passenger seat; and Larry Cross (Cross), seated in the back seat. Officer Thiede recognized Cross from a prior contact with him

in a drug activity area approximately two nights before.[6]

Officer Thiede followed the car and noticed that the car did not have a visible rear license plate. The car pulled into an apartment complex parking lot located a half block from the 7–Eleven. The parking lot was dark and poorly lit. The car stopped in a parking space and the driver jumped out of the car. The driver rapidly approached the patrol car that was situated near the entrance of the parking lot.[7] Officer Thiede turned his spotlight on Freeman and requested that the driver produce his driver's license, proof of insurance, and registration. The driver was unable to produce any of these documents. The driver also stated a false name when Officer Thiede asked him to identify himself.[8]

Officer Thiede testified that it was "not really normal" for a person to jump out of his car and approach the patrol car. Officer Thiede stated that the driver's actions worried him and, as a safety precaution, he ordered the driver to place his hands on the police vehicle. At this time, he performed a pat-down search which did not produce any weapons.

Subsequently, Officer Thiede requested backup officers to assist him "because of the suspicious activities [he had] observed and the nervousness of the driver." Officer Thiede then placed Freeman in the back seat of his patrol car.

Officer Kevin Miyakusu, who was on routine patrol in that area, arrived several minutes later. Officer Thiede advised him of the situation and both officers decided that, for their safety, they would do a pat-down search of the occupants of the car. Officer Thiede approached the car and asked Sutherland

---

4. Officer Thiede's marked police car was in front of the 7–Eleven.

5. According to Officer Thiede, "I saw ... [Freeman] retrieve an item," but "never saw him actually conceal that item. But then again I never saw him put it back on the shelf.... He never made an attempt to pay for anything in the store."

6. During this incident, Officer Thiede suspected that Cross had been involved in narcotics traf-

ficking as he had $290 cash stuffed in his sock. Officer Thiede served Cross with a summons for loitering.

7. Officer Thiede testified that the driver had stopped his car on his own volition since Officer Thiede had not signaled or turned on his lights to motion the driver's car to stop.

8. The driver later admitted to Officer Thiede that he had given him a false name.

and Cross to exit the vehicle one at a time.[9] Both passengers complied with the request. Cross was searched for weapons which revealed nothing. Cross was placed in the back seat of Officer Miyakusu's patrol car for safety reasons.

Sutherland was told that a female officer would be coming to conduct a pat-down search. Sutherland was not handcuffed or placed in the patrol car but was watched by Officer Miyakusu while Officer Thiede returned to the car to search the vehicle for weapons.

Officer Thiede looked through a rolled-down window on the driver's side. He shined his flashlight and observed a clear plastic bag, in plain view, which contained what he suspected to be crack cocaine on the floorboard of the front passenger side. He then opened the driver's door and checked under the driver's seat and found a loaded .9 millimeter handgun. Officer Thiede additionally saw a young child sleeping in the back seat, later identified as Sutherland's son.

When Officer Thrumston arrived, she was briefed by Officer Thiede as to what had transpired. Officer Thiede testified that he told Officer Thrumston that he had found cocaine and a gun inside the car. Officer Thrumston asked Sutherland to place her hands on the patrol car and then asked Sutherland if she had anything on her person that Officer Thrumston should know about.[10] Sutherland began to cry and Officer Thrumston asked Sutherland again what she had on her. Sutherland responded that she had cocaine and that it was "inside of her." Officer Thrumston asked her what she meant by that and Sutherland stated that it was inside her body cavity. Officer Thrumston asked Sutherland if she could retrieve it and Sutherland responded yes. Officer Thrumston then suggested that Sutherland go into the back of the patrol car to remove the cocaine. Sutherland voluntarily complied and turned over the vial of cocaine.

Officer Thrumston placed Sutherland in her car and transported her to the substation for questioning.[11] On the way to the police station, Officer Thrumston drove Sutherland to her friend's home in order for Sutherland to make arrangements for her son to temporarily stay there. At the police station, Officer Thiede directed Sutherland into an interview room. Officer Thiede advised Sutherland of her *Miranda* rights and then asked her whether she understood her rights as they were read to her. Sutherland responded affirmatively and indicated that she was willing to talk to Officer Thiede.

Officer Thiede conducted the interrogation and Officer Thrumston was present. The interrogation began at approximately 3:00 a.m. The interrogation lasted about twenty minutes and included routine questioning.[12] During the interrogation, Sutherland told Officer Thiede that she had been holding the crack vial for Cross who had received it from the driver. Specifically, Sutherland stated that Cross had handed her the cocaine and told her to "shove it," which she said meant to put it in her body cavity in order to conceal it. Sutherland also stated that the gun belonged to the driver.

---

9.  Officer Thiede testified that he had no contact with any of the occupants of the vehicle while waiting for backup assistance.

10.  At the suppression hearing, Officer Thrumston testified that her line of questioning is standard procedure for ascertaining whether the person has any weapons or drugs on his or her body.

11.  The testimony is conflicting as to the exact point in time in which Sutherland was arrested. According to Officer Thrumston's testimony, after the pat-down search which produced the cocaine from Sutherland's body cavity, Officer Thrumston advised Sutherland that she was under arrest. According to Officer Miyakusu's written report, however, prior to Officer Thrumston's arrival, Sutherland was placed under arrest and thereafter Officer Miyakusu conducted a cursory pat-down search for weapons. Officer Thrumston testified that, prior to conducting her pat-down search, she was unaware that Sutherland had been placed under arrest by Officer Miyakusu.

12.  During the questioning, Officer Thiede advised Sutherland about the potential placement of her child with the Department of Social Services (DSS) if her child could not temporarily remain with anyone close to her. Officer Thiede testified that he mentioned this fact merely to avoid the involvement of DSS.

At the conclusion of the hearing, the district court granted Sutherland's motion to suppress the initial statement Sutherland had made to Officer Thrumston during the investigatory stop, the cocaine found inside Sutherland's body cavity, and the subsequent *Mirandized* statements Sutherland made at the substation. The district court suppressed the statement Sutherland had made during the investigatory stop on the ground that the statement was obtained in violation of *Miranda* and that the seizure of cocaine from Sutherland's body cavity was also the result of the *Miranda* violation. The district court found that, at the time Officer Thrumston performed the pat-down search, Sutherland was under arrest. The district court additionally suppressed Sutherland's subsequent statements, made after Sutherland was advised of her *Miranda* rights, as the illegal product of the initial interrogation made without the benefit of a *Miranda* warning.

The district court later supplemented its ruling by holding that the police did not have probable cause to ask Sutherland to get out of the car or to arrest her.

We hold that, under the specific circumstances of this case, the police officer was justified in conducting the investigatory stop of the driver. We additionally hold that the officer acted reasonably by separating the passengers and asking Sutherland to get out of the car in order to perform a pat-down search based on the officer's apprehension for his safety, the officer's reasonable suspicion of criminal activity, and his uncertainty as to the ownership of the vehicle. We therefore reverse the district court's ruling that the investigatory stop was improper. Further, based on the district court's limited findings of facts, we reverse the suppression order and remand to the district court for a determination consistent with our opinion in *People v. Dracon*, 884 P.2d 712 (Colo.1994), of whether Sutherland's pre-*Miranda* statement during the investigatory stop and her post-*Miranda* statements at the police station were made voluntarily and whether Sutherland's post-*Miranda* statements were tainted by her initial statement and the subsequent seizure of evidence during the pat-down search.

## II.

The prosecution claims that the district court erred in ruling that Officer Thiede did not have probable cause to request Sutherland to exit the vehicle. The prosecution asserts that the district court applied an incorrect legal standard in determining that Officer Thiede improperly requested Sutherland to step outside the vehicle. Finally, the prosecution contends that the record reflects that Officer Thiede's actions were justified by a concern for his safety.

Defense counsel asserts that the police officer's actions in requesting Sutherland to step out of the car, the temporary detainment of her, and the subsequent seizure of the cocaine found on her person were not constitutionally justified based on the officer's belief that the driver of the car had engaged in a theft and the lack of any documents by the driver proving ownership or lawful operation of motor vehicle.

At the suppression hearing, the district court held that Officer Thiede did not have probable cause to ask Sutherland to exit the car and then to subsequently arrest her. The district court found that the police officer's actions in ordering Sutherland out of the car and conducting a pat-down search were improper. The district court specifically found that the police officer's request to have everybody get out of the car was unreasonable under the circumstances:

Well, I think it's highly unusual that everybody has to get out of the car when somebody is pulled over and searched for weapons. That has never happened to me. When ... I get pulled over for speeding, my passengers don't have to get out and [be] searched for weapons. The whole thing is suspect to me. I just don't see why they had to get out. Now, if there is some reason to get out, ... there was no reason for the officer to go back to the car. There was no cocaine. There was no nothing.

. . . .

... [The police] didn't have probable cause to believe she had anything to do with [the alleged] theft. ... [Officer Thie-

de] didn't ask [the passengers] if they knew anything about the shoplift.... Just because it was a high drug traffic area doesn't give [Officer Thiede] cause to do that.

The determinative issue for our review involves a two-part inquiry: (1) whether Officer Thiede was justified from the inception in following the driver, and (2) whether Officer Thiede was justified in asking Sutherland to get out of the car.

■ To justify an investigatory stop and the detention of a person for weapons, three conditions must exist: (1) the officer must have a reasonable suspicion that criminal activity has occurred, is taking place, or is about to take place; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose. *People v. Weston,* 869 P.2d 1293 (Colo.1994); *People v. Martinez,* 801 P.2d 542, 544 (Colo.1990); *People v. Ratcliff,* 778 P.2d 1371, 1376 (Colo. 1989).

■ In determining the validity of an investigatory stop, the trial court must consider whether, under the totality of circumstances, the "specific and articulable facts known to the officer [at the time of the encounter], [when] taken together with rational inferences from these facts, create[ ] a reasonable suspicion of criminal activity to justify the intrusion into the defendant's personal security." *People v. Thomas,* 660 P.2d 1272, 1274 (Colo.1983); *People v. Coca,* 829 P.2d 385, 387 (Colo.1992).

■ An investigatory stop is less intrusive than an arrest and, accordingly, a police officer may conduct an investigatory stop and a limited search of a person for weapons with less than probable cause for an arrest. *Weston,* 869 P.2d at 1296. If an officer believes that a person may be armed and potentially dangerous, then the officer may conduct a pat-down search of the individual for weapons. *People v. Corpany,* 859 P.2d 865, 869 (Colo.1993). As we have previously stated, "[i]n light of the particular hazards confronting a police officer in roadside encounters involving drivers and passengers of automobiles [when more than a traffic violation is involved], Fourth Amendment rules permit a police officer to order a driver or passenger out of the vehicle during an investigatory stop [and frisk them for weapons]." *People v. Melgosa,* 753 P.2d 221, 225 (Colo.1988); *see also* § 16–3–103(2), 8A C.R.S. (1986) (providing that officers may conduct a pat-down search if they reasonably suspect that their personal safety requires it).

■ Although we give deference to the district court's findings, we will set aside a trial court's findings of fact where they are not supported by the record. *Weston,* 869 P.2d at 1298. Our review of the record satisfies us that the district court's conclusion that the investigatory stop was improper is not supported by competent evidence in the record.

■ In our opinion, under the totality of the circumstances standard, there were sufficient grounds to support the initial investigatory stop of the vehicle. A review of the evidence in this case clearly establishes that the officer had a reasonable suspicion of criminal activity when he engaged in following the driver of the vehicle.

Officer Thiede observed the driver's nervous behavior in the 7–Eleven and had reason to suspect that the driver had stolen an item from the 7–Eleven. Officer Thiede followed the vehicle to a dimly lit parking lot. He additionally recognized Cross from a previous contact involving a suspicion of drug activity. Further, Officer Thiede testified that the vehicle lacked a visible rear license plate as required by law.

The driver parked the car, jumped out of the vehicle, and rapidly approached the officer's car. Officer Thiede, fearing for his safety, placed a spotlight on Freeman, and ordered him to place his hands up on the vehicle. Officer Thiede asked the driver to produce his driver's license, proof of insurance, and registration. When the driver was unable to produce any of the documents proving ownership or lawful operation of the motor vehicle, Officer Thiede conducted a pat-down search of the driver.

■ Officer Thiede's concern for his safety and his belief that the passengers, including

Sutherland, may have been armed is supported by the testimony elicited during the suppression hearing:

[DEFENSE COUNSEL]: Isn't it true that Mr. Freeman approached and he demanded to know why you were following him?

[OFFICER THIEDE]: He didn't demand to know why I was following[.] [H]e goes, "What's up?" I don't know if you can [construe] that [to mean why I was following him].

[DEFENSE COUNSEL]: He just said, "What's up?"

[OFFICER THIEDE]: I believe that's all he said. "What's up?" And he walked towards me. Usually I would put him back in the driver's seat, but [with] the number of occupants [of the car], I felt my safety might be at risk if [I ordered him to return to] the vehicle, so I did a pat-down search of him for weapons.

Officer Thiede thereafter called for backup police protection in order to protect his personal safety, and he waited for backup to arrive before searching the car. Once the backup police officer arrived, Officer Thiede asked the occupants to exit the vehicle one at a time. When the two passengers were outside the car, he separated them from each other and a pat-down search for weapons was conducted on each of the individuals.

A pat-down search was not conducted on Sutherland until Officer Thrumston, the female officer, arrived. Prior to Officer Thrumston's arrival, Sutherland was watched by Officer Miyakusu while Officer Thiede returned to the car to search the vehicle for weapons.

In searching the driver's side of the car, Officer Thiede reached under the driver's seat and discovered a .9 millimeter handgun. The entire investigatory stop lasted for several minutes, in which Sutherland was detained for a fraction of that time.

In light of the course of events and the reasonable suspicion standard, we conclude that, under the totality of the circumstances, the initial investigatory stop of the vehicle and temporary detention of its occupants was constitutionally justified and reasonable. Officer Thiede had an articulable and specific basis for suspecting that criminal activity had occurred or was in progress, and the intrusion was reasonably related to his concern for his safety.

We hold that, where the initial intrusion and inquiry of the driver was permissible in order to secure the safety of the officers at the scene, the officer's conduct was similarly justified in subsequently ordering Sutherland out of the automobile, patting her down for weapons, and separating the passengers during the investigatory stop. Because the district court erroneously applied a probable cause standard, we reverse the district court's ruling that the investigatory stop was improper.

### III.

The district court suppressed Sutherland's post-*Miranda* statements to Officer Thiede at the police station, concluding that the initial statement made by Sutherland during the pat-down search in conjunction with the improper search tainted her subsequent statements.

The prosecution contends that the district court erred in suppressing Sutherland's post-*Miranda* statements to Officer Thiede at the police station as the illegal product of her initial statement to Officer Thrumston. The prosecution maintains that the threshold question to be resolved is whether Sutherland's initial statement was voluntary. The prosecution further claims that the district court did not apply a correct legal analysis since the district court failed to make any findings on the voluntariness of either the initial statement or the post-*Miranda* statements.[13] We agree.

13. Sutherland maintains that the district court, by ruling that the actions of the police were improper from the onset, implicitly found that both her initial statement and her post-*Miranda* statements were involuntarily made. The district court did not make such findings. Further, in part II, we concluded that the district court erred in finding that the investigatory stop was improper. Because of our holding, Sutherland cannot now rely on the district court's erroneous finding to support her argument that the initial statement was involuntarily made.

■ Our review of the record reveals that the district court did not make any findings on the voluntariness of Sutherland's initial statement to Officer Thrumston or her post-*Miranda* statements. The factors used to determine voluntariness of the statements were not presented by either party at the suppression hearing and were never addressed by the court. Further, the district court did not determine whether Sutherland knowingly, voluntarily, and intelligently waived her *Miranda* rights.

In the absence of sufficient findings of fact and conclusions of law by the district court concerning the circumstances under which Sutherland's statements were made, our appellate review function is hindered. We therefore remand this case to the district court to consider evidence bearing on whether Sutherland's initial statement during the investigatory stop and her post-*Miranda* statements at the police station were voluntarily made under the totality of the circumstances. In assessing the validity of Sutherland's voluntary waiver, the district court should consider whether coercive governmental conduct played a significant role in inducing the defendant to make the confession, *see Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *People v. Gennings*, 808 P.2d 839 (Colo.1991), and whether Sutherland's waiver of her *Miranda* rights was knowingly and intelligently made. *See Colorado v. Spring*, 479 U.S. 564, 574, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987). We therefore direct the district court to make further findings under the standards enunciated in *People v. Dracon*, 884 P.2d 712 (Colo. 1994).[14]

### IV.

The prosecution finally asserts that the fact that the bag of crack cocaine found on the floor of the car was not presented at the preliminary hearing should not prevent this evidence from being introduced at trial.

Sutherland claims that the only evidence introduced at the preliminary hearing was the cocaine recovered from her body cavity. She maintains that no testimony was elicited regarding the bag of crack cocaine retrieved from the search of the car. Sutherland contends that this court lacks jurisdiction to review this issue since it is an evidentiary issue and does not involve the suppression of evidence pursuant to Crim.P. 41 or 41.1. In the alternative, she asserts that the prosecution is prevented from now connecting her with possessing the cocaine in the car since she was never charged with possessing the cocaine found on the floor of the vehicle.

At the conclusion of the suppression hearing, the prosecution asked the district court whether the bag of crack cocaine found in the car would be admissible at trial. Although the district judge responded that the court had not found probable cause for the cocaine retrieved from the car, he nevertheless stated that the court was not suppressing this evidence. The prosecution, seeking clarification of this ruling, queried:

> [PROSECUTION]: Well, is the Court saying then that you aren't suppressing the first search; that we could prosecute on the [cocaine found in the car]?
>
> [THE COURT]: Yes.

■ The purpose of a preliminary hearing is to determine whether probable cause exists to believe that the defendant committed the crime charged. *Harris v. District Court*, 843 P.2d 1316 (Colo.1993). At the preliminary hearing, the prosecution is not required to present all of its witnesses or reveal all of its evidence. *Blevins v. Tihonovich*, 728 P.2d 732, 734 (Colo.1986); *People v. Quinn*, 183 Colo. 245, 249, 516 P.2d 420, 422 (1973).

■ If an officer discovers contraband during a legitimate protective search for weapons, "he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Michigan v. Long*, 463 U.S. 1032, 1050, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983). In *Long*, the seizure of

**14.** Our ruling is based on the fact that the district court, at the time of its ruling, did not have the benefit of this court's decision in *Dracon*.

an open pouch containing marihuana on the front seat was justified as a plain-view seizure during a valid investigatory search.

■ Although the district court erred in performing a probable cause analysis on the cocaine found in the car, the district court arrived at a correct result in not suppressing the evidence. Because this evidence was not suppressed, the fact that the evidence was not introduced at the preliminary hearing does not preclude the prosecution from offering the cocaine found in the car as evidence during the trial.

## V.

In summary, we conclude that the district court erred in finding that the investigatory stop was improper. We hold that, under the specific circumstances of this case, the police officer was justified in conducting the investigatory stop of the driver. We further hold that the officer acted reasonably by separating the passengers and asking Sutherland to get out of the car in order to perform a pat-down search based on the officer's apprehension for his safety, the officer's reasonable suspicion of criminal activity, and the uncertainty as to the ownership of the vehicle. We further reverse the district court's suppression of the post-*Miranda* statements and remand with directions to make additional findings consistent with our opinion in *People v. Dracon* as to whether Sutherland's statements were voluntarily made and whether her post-*Miranda* statements to Officer Thiede were tainted by her initial statement to Officer Thrumston.