The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Thomas Ray MACK, Defendant–Appellee.

No. 94SA430.

Supreme Court of Colorado,
En Banc.

May 8, 1995.

A. William Ritter, Jr., Dist. Atty., Henry R. Reeve, Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, State Public Defender, Cynthia Camp, Deputy State Public Defender, Denver, for defendant-appellee.

Justice VOLLACK delivered the Opinion of the Court.

The prosecution brought this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), 8A C.R.S. (1986 & 1994 Supp.), to challenge an order entered by the Denver District Court. The district court suppressed the crack cocaine and shotgun discovered through a consent search of the defendant, Thomas Ray Mack (Mack), and his hotel room, and also suppressed all inculpatory statements made by Mack to the police officers during a custodial interrogation in the hotel room and during a custodial interrogation at the police station. The district court suppressed the evidence found in the hotel room because the police officers failed to issue a *Miranda*[1] warning prior to Mack's giving consent to search the room. The district court held that Mack's initial statement to the police officer in the hotel room was made during a custodial interrogation and was obtained without the police officer issuing a *Miranda* warning. The district court additionally concluded that Mack's post-*Miranda* statements at the police station were tainted by his initial statement obtained in violation of *Miranda*.

For the reasons set forth below, we affirm the suppression order in part, reverse in part, and remand the case to the district

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

court for additional findings of fact consistent with our opinions in *People v. Dracon,* 884 P.2d 712 (Colo.1994), and *People v. Sutherland,* 886 P.2d 681 (Colo.1994).

## I.

Mack was charged in the Denver District Court with unlawful distribution, manufacturing, dispensing, sale, and possession of a schedule II controlled substance (cocaine),[2] and as a special offender.[3] Mack filed a motion to suppress the evidence found on his person, the statement made to the police officer during the custodial interrogation in the hotel room, and the subsequent statements made to the officer at the police station.

The district court conducted a suppression hearing in which it heard testimony from Officer Steven Wampler, a detective for the Vice and Narcotics Bureau of the Denver Police Department, Detective Donald Brannan of the Vice and Narcotics Bureau of the Denver Police Department, and the defendant. The following facts were developed through the testimony at the hearing.

On October 29, 1993, several members of the Denver Police Department narcotics unit went to the Standish Hotel in downtown Denver and conducted a surveillance of suspected drug trafficking out of rooms 200 and 302. This investigation was based primarily on information received by Detective Wampler from a confidential informant who had previously supplied reliable information to the police department. The informant told Detective Wampler that a man with the surname of Scott was selling crack cocaine out of room 200 of the Standish Hotel and that a second male whose name the informant did not know was selling cocaine out of room 302. The informant described the unidentified man to Detective Wampler. The officers verified with the hotel management that room 200 was registered to Lynn Scott, but failed to determine the identity of the person registered in room 302.

The officers knocked on the door of room 200 and were invited in by Lynn Scott.[4] The officers searched the room pursuant to Scott's consent. They found no cocaine in the room. According to Detective Wampler, Scott denied any involvement in selling drugs but stated that the individual in room 302 was selling cocaine and was also Scott's supplier.

Detective Wampler went up to room 302 and observed two men talking in the open doorway of the room. The individual standing in the room matched the description given by the confidential informant and was later identified as Thomas Ray Mack. Upon seeing Detective Wampler passing his room and walking down the hall, Mack, who was standing inside the room, immediately shut the door to room 302 in the face of the other individual standing there. According to Detective Wampler, that individual turned and looked at him and started to reach towards his right front pants pocket. Detective Wampler approached the individual, later identified as Alvin Harris (Harris), who was still in the hall, and asked Harris to accompany him back to room 200, which he consented to do.

While the officers were in room 200 with Harris, Mack knocked on the door. Detective Brannan opened the door and invited him into the room. The detective asked Mack for consent to search his person, and Mack consented to the search. The detective found marijuana, $120 in cash, the key to room 302, and a set of car keys with an alarm security device. When Detective Brannan asked Mack to produce identification, Mack was unable to do so. Detective Brannan detained Mack for purposes of issuing a citation for possession of the marijuana found on his person. At no time did the officers advise Mack of his *Miranda* rights or tell Mack that he was free to leave. Further, at no time did either officer indicate to Mack that he was under arrest. Conversely, Mack neither indicated that he wanted to leave nor

2. § 18–18–405(1)(a), 8B C.R.S. (1994 Supp.); § 18–18–204(2)(a)(IV), 8B C.R.S. (1994 Supp.).

3. § 18–18–407(1)(f), 8B C.R.S. (1994 Supp.).

4. The detectives were not in uniform but they did have badges chained around their necks which identified them as police officers.

stated that he wanted to terminate the questioning.

Detective Wampler asked Mack if the key to room 302 belonged to him. Mack replied that the key did not belong to him and that he was holding the key for someone else. Mack additionally told the detectives that he was holding the car keys for a friend and that he did not know anything about the car and did not know the friend's name.

The detective then asked Mack if he could search room 302, and according to the detective, Mack gave consent to search the room. Detective Wampler went upstairs and used the key found on Mack to enter room 302. The detective recovered a plastic bag containing crack cocaine and a sawed-off 12-gauge shotgun. Mack was thereafter arrested for possession of cocaine and the shotgun.

Mack was transported to the Denver Police Department where Detective Wampler directed him into an interview room and advised him of his *Miranda* rights. Detective Wampler asked Mack whether he understood his rights as they were read to him. Mack responded affirmatively and signed the written advisement form indicating that he had been advised of his rights.

In the course of giving a statement, Mack said that the car keys belonged to his girlfriend and that he usually sold drugs out of a car rather than selling out of a motel room.

Detective Brannan, believing the car to be stolen, advised the uniformed police officers who had transported Mack to the police station as to what had transpired. Detective Brannan directed the officers to check the area surrounding the Standish Hotel for an automobile whose alarm system would be activated by the remote control device attached to the car keys recovered from Mack. The car was found several miles from the Standish Hotel and was impounded. A search of the car revealed crack cocaine and $308 that was recovered from a woman's purse in the trunk of the vehicle.

At the conclusion of the hearing, the district court granted the motion to suppress in part and denied it in part. The district court ruled that Mack voluntarily consented to the body search and that therefore the items

seized from the body search—the car keys and alarm security device, marijuana, cash, and the key to room 302—were admissible. The district court suppressed the crack cocaine and shotgun recovered from room 302, finding that Mack's consent to search room 302 was obtained in violation of Mack's *Miranda* rights. Relying upon the standard enunciated by this court in *People v. Thomas,* 839 P.2d 1174, 1179 (Colo.1992), the district court determined that a reasonable person in the defendant's position would have felt that he was not free to leave. The district court concluded that Mack's statement in response to the detective's question as to the person to whom the room key belonged was the product of a custodial interrogation without the benefit of a prior *Miranda* warning. The district court additionally suppressed Mack's statements concerning his dealing drugs out of room 302 at the hotel which Mack made to Detective Wampler at the police station after he had been given a *Miranda* advisement. The district court determined that his post-*Miranda* statements were the illegal product of the initial interrogation made without the benefit of a *Miranda* warning. The district court finally found that the post-*Miranda* statements relating to the ownership of the car and the contents of the car were admissible and that the items seized from the car, believed by Detective Brannan to be stolen, were admissible as part of an inventory search of an impounded vehicle.

We hold that Mack's statement at the hotel room was the product of a custodial interrogation. Further, based on the district court's limited findings of facts, we reverse the suppression order and remand the case to the district court for a determination consistent with our opinions in *People v. Dracon,* 884 P.2d 712 (Colo.1994), and *People v. Sutherland,* 886 P.2d 681 (Colo.1994), as to whether Mack's pre-*Miranda* statement during the custodial interrogation at the hotel room and his post-*Miranda* statements at the police station were made voluntarily and whether Mack's post-*Miranda* statements were tainted by his initial statement. We further reverse the district court's suppression of the evidence found in the hotel room and remand

the case with directions to make additional findings as to whether the evidence is admissible as the product of a valid consent search.

## II.

The district court determined that Mack was in custody during the interrogation at the hotel room and suppressed Mack's statement to Detective Wampler as the product of a custodial interrogation without the benefit of a *Miranda* warning. The district court further suppressed Mack's post-*Miranda* statements to Detective Wampler as the illegal product of the initial custodial interrogation.

The People claim that the record does not support the district court's finding that Mack was in custody at the time he made the statement in the hotel room. Specifically, the People aver that the district court applied the wrong standard in determining whether Mack was in custody at the time he made the statement. The district court stated that "the essential element of custody is that a reasonable person in the suspect's position would feel that he is not free to leave." The People argue that the proper test for the determination of custody is "whether a reasonable person in the defendant's position would have considered himself deprived of his freedom of action in a significant way at the time of questioning."

Mack contends that, at the time Detective Wampler inquired whether the room key belonged to him, he was in custody. Mack further maintains that this question constituted an interrogation because the detective should have known that the question "Is this your key?" was reasonably likely to elicit an incriminating response from Mack.[5]

▬ Under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), a defendant's statements made during the course of a custodial police interrogation are

inadmissible as evidence in a criminal case unless the prosecutor establishes that the defendant was advised of certain constitutional rights and waived those rights.[6] Before a *Miranda* advisement is required, the following two prerequisites must be satisfied: the person to whom the advisement is given must be in custody at the time of the advisement; and the statements being made by the person must be the product of a police interrogation. *People v. Haurey*, 859 P.2d 889, 893 (Colo.1993); *People v. Hamilton*, 831 P.2d 1326, 1330–31 (Colo.1992); *People v. Sharpless*, 807 P.2d 590, 591 (Colo.1991).

▬ In determining whether an individual is in custody at the time of questioning, the relevant inquiry is whether a reasonable person in the suspect's position would consider himself deprived of his freedom of action in a significant way at the time of questioning. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151–52, 82 L.Ed.2d 317 (1984); *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 713–14, 50 L.Ed.2d 714 (1977); *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612; *Haurey*, 859 P.2d at 893; *People v. LaFrankie*, 858 P.2d 702, 705 (Colo.1993). This determination is a question of fact to be resolved by the trial court after assessing the credibility of the witnesses and weighing their testimony. *LaFrankie*, 858 P.2d at 706; *Hamilton*, 831 P.2d at 1331; *People v. Trujillo*, 784 P.2d 788, 792 (Colo.1990). These findings will not be reversed on appeal if they are supported by competent evidence and if the trial court applied the correct legal standard. *Haurey*, 859 P.2d at 893; *People v. Horn*, 790 P.2d 816, 819 (Colo.1990).

The district court, quoting *People v. Thomas*, 839 P.2d at 1179, applied the test "[whether] a reasonable person in the suspect's position would feel that he is not free to leave" in determining that Mack was in custody at the time the statement was made. Specifically, the district court found:

> right not to say anything; that anything she says can be used against her in court; that she has a right to the presence of an attorney; and that, if she cannot afford an attorney, one will be appointed for her prior to questioning, if she so desires. *Miranda*, 384 U.S. at 478–79, 86 S.Ct. at 1629–30.

**5.** This questioning occurred based on the detectives' suspicion that cocaine was being sold out of room 302 and after they had searched Mack and found the key to room 302 on his person.

**6.** Prior to interrogating a person in police custody, a police officer is obliged to inform the person of the following rights: that the person has a

Detective Brannan said he recovered a set of keys ... from room 302, the marijuana from the jacket pocket, and $120 cash, and car keys with an alarm remote on a key ring. He then asked the defendant for ID and when he had none, Detective Brannan ... ["]detained him." ...

....

... Detective Wampler ... [testified that] "Mack came to the door of room 200, no weapons were pulled on Mack, and [Detective] Brannan asked Mack to consent to the search of his person in which he proceeded to consent and those things were recovered...."

And then he said there were a series of questions after that, is this your key, meaning [to room] 302.... What is clear here is that there was a dividing line between the first set of questions and the second set of questions and the dividing line was a detention.

... I think that's important because while he was detained and subsequent questions were asked about room 302, he was not given his *Miranda* warning.... I find that the defendant was in custody because he was detained for the marijuana.... I find that there was [an] interrogation and the interrogation related to matters which could substantively incriminate the defendant.

... Detective Wampler ... testified [that] he had previous information from a confidential informant that someone matching this defendant's description was dealing cocaine out of room 302 and now questions were asked about room 302, was this his key, did he mind if they went to search it, and that was clearly designed to elicit information which might incriminate the defendant.

◼ The prosecution finds it significant that the district court articulated the language "free to leave" and not "freedom of action." We do not.

In *People v. Cleburn,* 782 P.2d 784 (Colo. 1989), *cert. denied,* 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990), we stated that

[t]he test for whether a person is in police custody is "whether a reasonable person in the suspect's position would consider himself deprived of his freedom of action in any significant way." ... Application of the "reasonable person" test requires an objective assessment of whether a reasonable person in the defendant's circumstances would have believed that he was free to leave the officer's presence....

*Id.* at 786 (quoting *People v. Sandoval,* 736 P.2d 1201, 1203 (Colo.1987)). As *Cleburn* demonstrates, "freedom of action" and "free to leave" have been used interchangeably in determining whether a person is in custody. We do not consider the district court's framing of the test to have affected its assessment of the credibility of the witnesses and the weighing of their testimony. Further, our review of the record satisfies us that the district court's findings of fact are supported by competent evidence in the record. The district court correctly determined that Mack was in custody at the time of the questioning by the detective. We conclude that, although the district court used the "free to leave" language rather than "freedom of action," the district court applied the correct legal standard in resolving the issue of a custodial interrogation.

◼ We must next consider whether Mack's custodial statement was the result of police interrogation. For purposes of *Miranda,* the term "interrogation" refers both to express questioning by a police officer, and to any words or actions on the part of the officer that he or she should know are reasonably likely to elicit an incriminating response from the defendant. *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980); *People in the Interest of J.C.,* 844 P.2d 1185, 1189 (Colo.1993); *People v. Probasco,* 795 P.2d 1330, 1332 (Colo.), *cert. denied,* 498 U.S. 999, 111 S.Ct. 558, 112 L.Ed.2d 564 (1990).

◼ Detective Wampler's initial question concerning ownership of the room key, to which Mack responded, was designed to elicit an incriminating response. We therefore hold that the detective's initial question in the hotel room constituted a custodial interrogation without the benefit of a *Miranda* warning. Accordingly, the district court properly suppressed Mack's response to De-

tective Wampler's question about whether the key belonged to him.

### III.

The prosecution next contends that the district court erred in concluding that the request for consent to search room 302 constituted a custodial interrogation in violation of *Miranda.* The prosecution asserts that the district court failed to determine whether Mack's consent to search room 302 was voluntary. Accordingly, the prosecution maintains that the district court erred in suppressing the evidence found in the room.

Mack asserts that the trial court correctly suppressed the items seized from room 302 because the consent to search the room was invalid based on the statement made during the initial custodial interrogation in violation of *Miranda.*

■ The Fourth Amendment to the United States Constitution and Article II, Section 7, of the Colorado Constitution prohibit warrantless searches of a person's home or property, whether to make an arrest or to search for specific objects. *See Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 2797–98, 111 L.Ed.2d 148 (1990); *People v. Hopkins,* 870 P.2d 478 (Colo.1994). However, the prohibition against warrantless searches does not apply when voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the property. *Rodriguez,* 497 U.S. 177, 183, 110 S.Ct. 2793, 2797–98; *People v. Breidenbach,* 875 P.2d 879, 888 (Colo.1994); *People v. McKinstrey,* 852 P.2d 467, 470 (Colo.1993).

■ When consent is given after an interrogation in violation of *Miranda,* the consent is likely to be tainted by the unconstitutional interrogation. *Cleburn,* 782 P.2d at 787. One way in which the prosecutor can purge the initial illegal taint, however, is by demonstrating the voluntariness of the subsequent consent. *Breidenbach,* 875 P.2d at 890. If the consent is not sufficiently an act of free will so as to purge the taint of the illegal interrogation, the evidence recovered from the search must be suppressed as the fruit of the poisonous tree. *Id.*

■ The district court determined that the People failed to satisfy its burden by clear and convincing evidence that the consent to search the room was valid since a *Miranda* advisement was not given. Accordingly, the district court suppressed the items seized from room 302, including the bag of crack cocaine and the weapon. Specifically, the district court reasoned as follows:

There was no suggestion that the defendant could refuse to consent or that he had standing to refuse to consent or that this was within his rights.

There is no advisement of either Miranda or the consent issue. He had been detained. He's not free to go. There was no advisement of his Miranda rights. He was not advised that he could refuse to consent. He was questioned. The consent isn't valid.

We hold that the district court must make further findings of fact as to whether Mack's consent was voluntary. In assessing the voluntariness of Mack's consent to search the room, the district court should consider the totality of the circumstances surrounding the consent. The district court should consider factors such as the defendant's age, education, intelligence, and state of mind, as well as the duration, location, and other circumstances of the search. *Breidenbach,* 875 P.2d at 890; *Cleburn,* 782 P.2d at 787. We therefore remand this case to the district court to make the appropriate findings as to whether Mack's consent to search room 302 was voluntary.

### IV.

■ The prosecution finally contends that the district court erred in suppressing Mack's post-*Miranda* statements to Detective Wampler at the police station as the illegal product of his initial statement to the detective.

The district court suppressed Mack's post-*Miranda* statements to Detective Wampler at the police station, concluding that the initial statement made by Mack at the hotel room without the benefit of a *Miranda* warning tainted his subsequent statements.

As we have discussed in our recent decisions in *People v. Dracon*, 884 P.2d 712 (Colo. 1994), and *People v. Sutherland*, 886 P.2d 681 (Colo.1994), the threshold question to be resolved by the district court is whether Mack's initial statement was voluntary.

Our review of the record reveals that the district court failed to make any findings on the voluntariness of Mack's initial statement to Detective Wampler or his post-*Miranda* statements. The factors used to determine voluntariness of the statements were not presented by either party at the suppression hearing and were never addressed by the district court. Further, the district court did not determine whether Mack knowingly, voluntarily, and intelligently waived his *Miranda* rights.

 In the absence of sufficient findings of fact and conclusions of law by the district court concerning the circumstances under which Mack's statements were made, our appellate review function is hindered. We remand this case to the district court to consider evidence bearing on whether Mack's initial statement during the custodial interrogation at the hotel room and his post-*Miranda* statements at the police station were voluntarily made under the totality of the circumstances. We direct the district court to make further findings under the standards enunciated in *Dracon* and *Sutherland*.[7]

### V.

In summary we hold that the district court properly found that the initial statement to Detective Wampler was made during a custodial interrogation absent a *Miranda* warning. We reverse the district court's suppression of the post-*Miranda* statements and remand the case with directions to make additional findings consistent with our opinions in *Dracon* and *Sutherland* as to whether Mack's pre- and post-*Miranda* statements were voluntarily made and whether his post-*Miranda* statements to Detective Wampler were taint-

ed by his initial statement at the hotel room. We further reverse the district court's suppression of the evidence found in the hotel room and remand the case with directions to make additional findings as to whether the evidence is admissible as the product of a valid consent search. Accordingly, the district court's ruling is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

---

7. In assessing the validity of Mack's voluntary waiver, the district court should consider whether coercive governmental conduct played a significant role in inducing the defendant to make the confession, *see Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *People v. Gennings*, 808 P.2d 839 (Colo.1991), and whether Mack's waiver of his *Miranda* rights was knowingly and intelligently made. *See Colorado v. Spring*, 479 U.S. 564, 574, 107 S.Ct. 851, 857–58, 93 L.Ed.2d 954 (1987).