**The PEOPLE of the State of Colorado, Plaintiff–Appellant**

v.

**Clovis VIGIL, Defendant–Appellee.**

**No. 10SA106.**

Supreme Court of Colorado,
En Banc.

Nov. 15, 2010.

Frank Ruybalid, District Attorney, Third Judicial District, Mark T. Adams, Assistant District Attorney, Walsenburg, Colorado, Attorneys for Plaintiff–Appellant.

Carl D. Fatta, Pueblo, Colorado, Attorney for Defendant–Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

Clovis Vigil was arrested and charged with possession of a controlled substance as well as possession with intent to distribute. At the time of his arrest, Vigil confessed to possession and indicated where he kept the drugs only after the arresting officers had used force against him, inflicting numerous injuries. The trial court held that Vigil was arrested without probable cause and that his various inculpatory statements were involuntarily given. The trial court suppressed those statements from admission into evidence as well as the bags of cocaine that were collected from Vigil's pocket. The People appeal the trial court's suppression order. We conclude that the trial court's suppression order was proper and affirm its decision.

## II. Facts and Procedure

In July 2009, an off-duty Sheriff's Deputy witnessed what he believed to be an illegal drug transaction in the parking lot of a store in Walsenburg, Colorado. He observed Clovis Vigil, his dog leashed to one hand, approach a parked car with two occupants. After a short interaction, Vigil was handed something, which he placed in his pocket. Vigil then left the parking lot on foot. The off-duty Sheriff's Deputy reported his observations to the dispatcher, identifying Vigil and the two people he had interacted with as people he knew to be involved in drug deals. Dispatch then relayed this information to a Walsenburg police officer, who proceeded to locate Vigil while he was still walking through town.

While driving in his patrol car, the responding police officer spotted Vigil, activated his emergency lights, and pulled up next to him. Exiting his vehicle, the officer told Vigil that he needed to ask him a few questions. At the officer's request, Vigil stopped walking and listened to him. The officer told Vigil that he needed to speak with him because he had been named in a possible drug transaction in the parking lot of a nearby store. Vigil, through a string of profanities, clearly indicated that he did not want to answer any questions. The officer responded by saying that he wanted a brief explanation of Vigil's actions in the parking lot, as an off-duty officer had said that he had seen Vigil in a drug deal.

Vigil apparently grew agitated and flailed his arms, one of which was still tethered to his leashed dog. Although Vigil was not carrying anything and was dressed in jeans and a t-shirt, because of Vigil's agitated state, the officer asked him to put his hands on the hood of the police car and submit to a frisk "because of an officer safety issue." Vigil declined and apparently turned to leave the scene. At this time a second officer arrived.

As Vigil turned to leave, the first officer informed Vigil that he was under arrest for disorderly conduct. The officer slowed Vigil's attempt to leave the scene by grabbing his shirt. When Vigil attempted to shrug off the officer's grab, the first officer struck him with a martial arts "back fist" to his face, fracturing multiple bones in his face and dropping Vigil to his knees. The second officer attempted to spray Vigil's eyes with OC spray, a chemical repellant, and then struck him three times with a metal baton around the lower back and buttocks. Both officers then forced him against the ground, kneed him in the back, and handcuffed him. While being handcuffed, Vigil called out, "alright, alright, I'll give you the shit. It's in my left front pocket." The officers rolled him over and discovered baggies of cocaine in his pocket.

With Vigil's injuries both numerous and apparent, he was taken from the scene in an ambulance to a local hospital. Once at the hospital he received over six hours of medical treatment. Vigil's sinal and occipital bones

were broken; his left eye was deeply bruised and bleeding; he had numerous lacerations on his face and side from being pushed against the ground, and welts from being struck with the baton were already evident. The medical staff recommended that Vigil be taken to Pueblo because of the severity of his injuries, but he refused and was instead taken directly to the police department by the same officers who had arrested him. There, he was interrogated beginning at 2:05 a.m. after signing a *Miranda* waiver form, and he gave various inculpatory statements.

Prior to trial, Vigil moved to suppress his confession at the scene of his arrest, the drugs found on his person, and the inculpatory statements he made during his interrogation. The trial court found it incredible that two trained and fully armed officers felt threatened by a man attempting to walk away from them with a leashed dog. Further, the trial court found that Vigil never posed a threat to officer safety and that the amount of force used was unreasonable and unnecessary. The court held that Vigil's initial confession at the scene of his arrest was an involuntary utterance as the result of the police officers' coercive use of physical force, and that the officers arrested Vigil without probable cause. The court also concluded that the prosecution had not met its burden of establishing that Vigil's subsequent confession at the police department was voluntarily made. As such, the trial court suppressed Vigil's statements as well as the baggies of cocaine.

The People filed this interlocutory appeal challenging the trial court's suppression order. After reviewing the record, we affirm the trial court's order.

### III. Analysis

The People challenge the trial court's suppression order with respect to Vigil's first confession, the contraband discovered in his pocket, and his later confession after medical treatment. We conclude that the trial court's suppression order was appropriate.

### A. Confession at Arrest

Although not clearly articulated in their brief, the People appear to challenge the trial court's determination that Vigil's original statement at the scene of his arrest was involuntary and so inadmissible. The Due Process Clause of the Fourteenth Amendment prohibits the admission of involuntary statements into evidence. *See People v. Miranda–Olivas*, 41 P.3d 658, 660 (Colo. 2001) (citing *Colorado v. Connelly*, 479 U.S. 157, 181–82, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)). Once a defendant has challenged a statement as involuntary, the prosecution must establish by a preponderance of the evidence that the defendant's statements were voluntarily given, *Connelly*, 479 U.S. at 168–69, 107 S.Ct. 515, and it must show that the defendant's will had not been overborne by coercive conduct, *see People v. Valdez*, 969 P.2d 208, 212 (Colo.1998).

The People assert—though without argument—that Vigil's remarks of "alright, alright, I'll give you the shit, it's in my left front pocket" were spontaneous and voluntary. However, in the same sentence, the People admit that Vigil only made the statement after finding himself "under the firm control of the officers." It is apparent from the record that Vigil gave this statement immediately after being struck in the face, pushed to the ground, sprayed with chemical repellent, and hit several times with a metal baton. In fact, Vigil uttered these words of confession while being handcuffed and with both of the officers pushing their knees into his back. Vigil's protestations of "alright, alright" indicate that his comments were meant as a response to the officers' use of physical force following the attempt to question him about his activity. *See People v. Medina*, 25 P.3d 1216, 1222 (Colo.2001) ("Coercive physical … conduct by the government renders an otherwise voluntary statement involuntary, if the conduct plays a significant role in inducing the statement."). The officers' use of force played a significant role in procuring an answer for their original and repeated inquiry, which was an explanation of Vigil's involvement in a drug deal.

Whether a statement is voluntary must be evaluated on the basis of the totality of the circumstances under which it is given.

*People v. Raffaelli,* 647 P.2d 230, 235 (Colo. 1982). We will uphold a trial court's findings of fact on the voluntariness of a statement where those findings are supported by adequate evidence in the record; however, the ultimate determination of whether a statement is voluntary is a legal question and is reviewed de novo. *Effland v. People,* 240 P.3d 868, 877–78 (Colo.2010).

In *United States v. Carroll,* the 8th Circuit determined that a statement made by the defendant during a valid arrest was voluntary even though, during the arrest, the police sprayed the defendant with mace and applied some force. 207 F.3d 465, 470, 472 (8th Cir.2000). The arrest followed a high-speed car chase, a shoot-out, and a fistfight, and the force applied was only "in response to [the defendant's] attempt to resist arrest" and only what was required to "subdue a fighting suspect." *Id.* at 472. Critically, the defendant's statement was voluntary because there was "no evidence in the record to suggest that [the defendant] answered because he feared the police would use further force against him." *Id.*

In contrast, here, the trial court found that Vigil posed no threat to the officers and that the amount of force the officers used against him was not only "wholly disproportionate to the circumstances involved," but rather coerced his statement. We agree with the trial court. Neither officer could articulate anything specific about Vigil's manner that imperiled their safety. Vigil was out walking his dog, dressed only in a pair of jeans and a t-shirt, carrying nothing. When the officer commanded Vigil to comply with a protective weapons search, he swore and just tried to leave.

Unlike the situation in *Carroll,* Vigil's arrest did not follow a high-speed chase, a shoot-out, and a fistfight. Here, the officers applied force that overwhelmed Vigil's capacity for self-determination. In contrast to the defendant in *Carroll,* Vigil confessed here

because he "feared the police would use further force."

We see no evidence in the record that supports the People's assertion that Vigil's statements were voluntarily given. *Cf. Connelly,* 479 U.S. at 168–69, 107 S.Ct. 515. The trial court thus rightly suppressed the statements Vigil made during his arrest as being involuntary and the result of the officers' coercive conduct.

Because we affirm the trial court's determination that Vigil's confession was involuntary and do not further review the basis for the trial court's finding that Vigil was arrested without probable cause,[1] it follows that the trial court correctly suppressed the drugs discovered through Vigil's confession and unlawful arrest as the "fruit of the poisonous tree." See *People v. Jones,* 828 P.2d 797, 800 (Colo.1992) (observing that the "fruit of the poisonous tree" doctrine precludes the admission of evidence "derived from information acquired by the police through unlawful means").

### B. Police Department Interrogation Statements

■ Finally, the People challenge the trial court's determination that Vigil's inculpatory statements at the police department after six hours of medical treatment should be suppressed as involuntary.

■ Although an earlier coerced confession does not necessarily undermine the voluntary character of subsequent confessions, *see Oregon v. Elstad,* 470 U.S. 298, 310–12, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), courts have an obligation to ensure that interrogating officers who receive such later confessions were not merely "the beneficiaries of the pressure" earlier applied that improperly led to the first confession, *Westover v. United States, decided with Miranda v. Arizona,* 384 U.S. 436, 496, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). To assess whether the coercion of the first confession infected the second con-

---

1. We decline to review the trial court's finding that the officers lacked probable cause to arrest Vigil. On appeal, the People argue that the officers had probable cause to search and arrest Vigil *after* his voluntary confession, but the People do not argue that, *prior* to Vigil's confession,

the police had probable cause to arrest him for disorderly conduct or for any other offense. Nor does the record provide any basis for such a finding. Further, the People do not argue that a search incident to a valid arrest took place.

fession, a court must look to all attendant circumstances: "When a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession." *Elstad,* 470 U.S. at 310, 105 S.Ct. 1285.

■ "When ... controlling facts are undisputed, the legal effect of those facts constitutes a question of law." *People v. D.F.,* 933 P.2d 9, 15 (Colo.1997). However, "[i]f the relation between the earlier and later confession is not so close that one must say the facts of one control the character of the other, the inference is one for the triers of fact." *Lyons v. Oklahoma,* 322 U.S. 596, 603, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944). As the Supreme Court explained in *Lyons,* where "different inferences may fairly be drawn from admitted facts" regarding whether a confession was coerced or voluntarily given, "the trial judge and the jury are not only in a better position to appraise" a witness's assertions, "but the legal duty is upon them to make the decision." *Id.* at 602, 64 S.Ct. 1208 (citing *Lisenba v. California,* 314 U.S. 219, 238, 62 S.Ct. 280, 86 L.Ed. 166 (1941)); *see also United States v. Schmidt,* 573 F.2d 1057, 1062 (9th Cir.1978).

Here, the record supports the trial court's determination that the coercion of Vigil's first confession infected his subsequent confession. After being told to seek further medical attention for his rather serious injuries, Vigil was released into the hands of the same officers that had inflicted those injuries. The officers then immediately took him to the police department for interrogation at 2:00 a.m. On such facts, it is perfectly reasonable to conclude that the officers were the beneficiaries of their own coercive conduct when they received Vigil's subsequent cooperation and confession. *Cf. Miranda,* 384 U.S. at 496, 86 S.Ct. 1602 (finding a Fifth Amendment violation where the FBI interrogated the defendant immediately after local police had already conducted an interrogation in the same place and without providing Miranda-like warnings). The facts thus support the inference that Vigil's statements were made under the lingering coercion of the physical force used against him, and that inference is committed to the trial court's determination. It is not our place to substitute our judgment for that of the trial court in this matter. *See DeBella v. People,* 233 P.3d 664, 667 (Colo.2010) ("An appellate court may not assign error to a trial court merely because it would have reached a different conclusion."). As such, we affirm the trial court's order suppressing Vigil's police department confession.

## IV. Conclusion

For the foregoing reasons, the order of the trial court is affirmed.

Justice COATS dissents.

Justice EID concurs in the judgment in part and dissents in part, and Justice RICE joins in the concurrence in the judgment in part and dissent in part.

Justice COATS, dissenting.

Because I believe the majority misses the analysis in this case, as the district court before it, and arrives at the same erroneous conclusions, I respectfully dissent. The district court appears to have misperceived the extent of the defendant's legal obligation to comply with the officers' demand to stop. The majority, however, simply declines to address the district court's obvious error on the grounds that the prosecutor has failed to recite certain magic words in his appeal.

The five baggies of cocaine taken from the defendant's pocket were clearly the product of a valid search incident to arrest. Although the undisputed testimony about the defendant's violent reactions was considerably more graphic and detailed, even the district court grudgingly found that when the police attempted an investigatory stop, for which it also found they had reasonable articulable suspicion of his involvement in a drug transaction, the defendant swore, flailed his arms, and attempted to walk away. Unlike a consensual encounter, an investigatory stop is a constitutionally cognizable seizure, with which a suspect is legally obligated to cooperate, at least to the extent of remaining stopped for brief questioning. *See United*

*States v. Place,* 462 U.S. 696, 702, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (acknowledging "the authority of the police to make a *forcible stop* of a person when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." (emphasis in original)).

When the defendant refused to stop and made clear his unwillingness to cooperate, even if only (in the court's terminology) by becoming agitated, swearing, and flailing his arms, the officers had probable cause to arrest him for disorderly conduct, § 18–9–106, C.R.S. (2010), obstructing government operations or a peace officer, §§ 18–8–102,–104, C.R.S. (2010), or perhaps even assault, § 18–3–201, et seq., C.R.S. (2010). At that point, a search of the defendant's pockets incident to his arrest was permitted, without additional justification. *See United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (following lawful custodial arrest, full search of the person requires "no additional justification"). It has long been resolved that once there is probable cause for an arrest and at least some degree of seizure ripening into an arrest thereafter, a search of the suspect will not be brought into question by speculation about the precise point at which the arrest occurred. *See Peters v. New York,* 392 U.S. 40, 67, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968); 3 Wayne R. LaFave, *Search and Seizure* § 5.1(a), at 13 (4th ed.2004).

The majority expressly declines to address the question of search incident to arrest on the grounds that the People did not argue the police had probable cause for an arrest prior to Vigil's confession or couch their appeal in terms of a search incident to arrest. *See* maj. op. at 1096, n.1. The point is, however, that the drugs were indisputably discovered during a search of the defendant contemporaneously with his seizure for failing to comply with a lawful order to stop. Even though the district court disbelieved the officers' testimony that they were in fear for their safety, its own findings of fact necessarily established justification for an arrest. Whether or not the police officers also believed they had the defendant's valid consent, they were therefore independently entitled to

search him incident to his seizure, which, if not already an arrest, unquestionably ripened into one at some point during the encounter.

I consider the majority's cramped reading of the prosecutor's assignments of error to be inappropriate for a challenge to the suppression of key evidence in a criminal case. The prosecutor clearly challenged the court's finding that the police exceeded the permissible scope of an investigatory stop and by doing so rendered all subsequent evidence obtained by them suppressible as the fruit of the poisonous tree. Where the validity of the defendant's seizure and contemporaneous search were expressly at issue, and the court's findings of historical fact establish probable cause and a valid search incident to arrest as a matter of law, I consider it the very height of hyper-technicality to allow an erroneous suppression order to stand on the grounds that the appropriate exception to the warrant requirement went unnamed. *Cf. Roberts v. Am. Family Mut. Ins. Co.,* 144 P.3d 546, 551 (Colo.2006) ("At least where a misreading of the controlling law leads a trial court to grant summary judgment in the face of undisputed facts to the contrary, a reviewing court cannot be constrained by the failure of a party to specifically identify the misreading and bring it to the trial court's attention."). I therefore believe the majority errs in affirming suppression of the drugs found on the defendant.

While the totality-of-circumstances analysis required of a voluntariness determination makes the district court's error in suppressing the defendant's statements less clear, I nevertheless believe its ruling cannot be sustained on the record before us. Assuming that the defendant's initial disclosure of the drugs in his pocket was actually an attempt to relieve pain rather than an attempt to gain some advantage by cooperating seconds before the drugs would be discovered anyway, his subsequent detailed statement implicating other participants was in no way a mere repetition or exploitation of his earlier statement. Especially in light of testimony to the effect that the defendant himself declined further medical assistance and sought the benefits of cooperation, the district court's

conclusory finding that the People failed to prove the voluntariness of his statement made six hours later, after waiving his *Miranda* rights, hardly contains the findings of historical fact needed to support a totality-of-circumstances assessment. *See People v. Sutherland,* 886 P.2d 681, 688 (Colo.1994) (noting importance of sufficient findings of fact for appellate review of voluntariness determination).

It seems apparent to me that the district court believed the officers used excessive force in subduing the defendant when he refused to comply with their demand to stop. While I do not believe that to be at all clear from the record before us, such a determination would not in and of itself justify the suppression of contraband found during a valid search or the suppression of uncoerced statements made after an effective waiver of *Miranda* rights. If the defendant has legitimate grievances against the police, he may pursue them in a proper forum, but he is not entitled to exoneration from a serious drug offense of which there is abundant admissible evidence.

Because I believe the district court's orders suppressing contraband found at the time of the defendant's arrest, as well as his post-*Miranda* statements, to be unsupported by the record before us, I would reverse. Therefore, I respectfully dissent.

Justice EID, concurring in the judgment in part and dissenting in part.

The trial court found that the defendant's statement made during arrest was the product of "excessive force in subduing the Defendant," and that the statements made six hours later were "the result of the serious injuries inflicted upon [the defendant] by the officers earlier" for which he was "still in need of further medical treatment." Because I would find that these conclusions are properly supported by the record, I would affirm the trial court's suppression of the statements as involuntary. However, I agree with the dissent that the prosecution properly preserved its objection to the suppression of the contraband evidence, and join the dissent to the extent that it would find that the evidence should not have been suppressed. *See* diss. op. at 1097–98.

I am authorized to say that Justice RICE joins in this opinion concurring in the judgment in part and dissenting in part.